<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-5034**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

ERIK LAMONT BOYD, a/k/a Erik Boyd,

                                        Defendant - Appellant.

---

**No. 05-5035**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

DEMETRIUS ALVIN BOYD, a/k/a Demetrius Boyd,

                                        Defendant - Appellant.

---

**No. 05-5047**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

ANTHONY DEWAYNE GILLIS, a/k/a Toney Gillis,

                                    Defendant - Appellant.


                          No. 05-5048


UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

        versus


LIONEL    CORNELIUS    JOHNSON,    a/k/a    Leonel
Johnson,

                                    Defendant - Appellant.


Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (CR-05-98-HEH)


Submitted:  October 6, 2006      Decided:  December 8, 2006


Before WILKINSON, WILLIAMS, and MOTZ, Circuit Judges.


Affirmed by unpublished per curiam opinion.


J. Paul Gregorio, INNSBROOK LAW GROUP, P.C., Glen Allen, Virginia, for Appellant Anthony D. Gillis; Claire G. Cardwell, STONE & CARDWELL, P.L.C., Richmond, Virginia, for Appellant Lionel C. Johnson; Robert J. Wagner, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant Erik L. Boyd; Dennis M. Martin, BROWN MARTIN, P.C., Richmond, Virginia, for Appellant Demetrius A. Boyd.  Chuck Rosenberg, United States Attorney, John S. Davis,

Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Erik Boyd, Demetrius Boyd, Anthony Gillis, and Lionel Johnson (collectively, Defendants) appeal their convictions and sentences for various drug and firearm crimes. For the reasons that follow, we affirm.

I.

Gillis, his brothers Erik Boyd and Demetrius Boyd, and his friend Johnson were involved in a crack cocaine trafficking conspiracy between 1998 and 2004. At trial, the Government presented testimony from several witnesses who were customers of the Defendants.

One of the early customers was Robin Williams. She had been a neighbor of Gillis and his brothers, and she bought crack cocaine from Demetrius Boyd three or four times per month for a four to six month period. She also bought crack cocaine from Gillis and Johnson.

Edward Roy was a regular customer of the Defendants. Roy bought crack cocaine from Johnson three or four times a week for several months. For a period of about eighteen months, Roy bought crack cocaine from Gillis. Demetrius Boyd and Erik Boyd were present for a few of these transactions. Roy also bought crack cocaine from the Boyds between five to seven times. Roy traded

4

silverware, a television, a VCR, paintings, and tools to Gillis for crack cocaine.

The Defendants' other customers who testified at trial included Mark Holmes, who bought crack cocaine from each of the Defendants; Calvin Johnson, who bought crack cocaine from Gillis, Erik Boyd, and Johnson; and Anthony Johnson, who bought crack cocaine from Gillis and Lionel Johnson.

According to Gillis's estranged wife, Doris (Thompson) Gillis, Gillis sold crack cocaine from their home. On four or five occasions, Johnson brought "eight balls" of crack cocaine to Gillis. Johnson also helped Gillis cut and bag crack cocaine on the kitchen table. Doris Gillis testified that her husband had between 13 to 15 customers.

Gillis frequently traded crack cocaine for his customers' firearms. In crack-cocaine-for-firearms exchanges, he obtained four shotguns and a rifle from Edward Roy, and a semiautomatic rifle from Steve Parker. Gillis then took these firearms to Washington, D.C., where he engaged in a reverse transaction -- a firearms-for-crack-cocaine exchange -- to obtain supplies of crack cocaine. Gillis also purchased firearms outright to use them in firearms-for-crack-cocaine exchanges to obtain supplies of crack cocaine. On two occasions, Gillis purchased firearms from pawn shops and then told Doris Gillis that he was taking the firearms to D.C. to trade for crack cocaine. On another occasion, Gillis had

his girlfriend purchase a firearm for him to take to the D.C. area to trade for crack cocaine. Each time Gillis returned with crack cocaine.

The crack cocaine trafficking conspiracy unraveled on January 17, 2004, when Gillis and Johnson went to the home of Eugene and Brenda Thompson -- the parents of Doris Gillis -- to leave a package of drugs and guns for Erik Boyd to pick up later. As Lionel Johnson sat behind the driver's seat of a blue Escort, Anthony Gillis went to the back door of the home and told the Thompson's other daughter, April Garriques, that he was leaving the package under her mom's car and that Erik Boyd would be by later that day to retrieve it. When April Garriques went out later to inspect what Gillis had left under the car, she saw guns and drugs in a white trash bag. April Garriques called her sister Doris, who in turn called the police. Deputy Danny Marks, a deputy with the Essex County (Virginia) sheriff's department, arrived thereafter with Doris Gillis. Deputy Marks photographed the bag and then took it to the sheriff's office, where he observed an investigator remove crack cocaine, a semiautomatic rifle, a shotgun, a sawed off shotgun, and a pistol.

Later that day, Erik Boyd, Demetrius Boyd, and Johnson arrived at the Thompson's home. Erik Boyd went in the house to ask Eugene Thompson if there was a package left for him by Gillis, and Eugene Thompson answered in the negative. Erik and Demetrius Boyd then

6

searched the house and surrounding property for the package.  April Garriques heard Demetrius Boyd talking on a cell phone, saying "[t]he stuff's not here.  Where is the stuff?"  (J.A. at 165.)

On June 1, 2005, the Defendants were jointly indicted in the Eastern District of Virginia on a total of eighteen drug and firearm-related counts.  All of the Defendants were charged with involvement in a conspiracy to distribute crack cocaine (count 1), in violation of 21 U.S.C.A. § 846 (West 1999), and with conspiracy to use and carry firearms during and in relation to a drug trafficking offense (count 16), in violation of 18 U.S.C.A. § 924(c) (West 2000).  Gillis and Johnson were charged with possession with intent to distribute crack cocaine (count 2), in violation of 21 U.S.C.A. § 841(a)(1) (West 1999); with possessing certain firearms in furtherance of the crack cocaine distribution conspiracy (count 14), in violation of 18 U.S.C.A. § 924(c); and with possession of an unregistered sawed off shotgun (count 15), in violation of 26 U.S.C.A. § 5861(d) (West 2002).  Erik Boyd and Demetrius Boyd were charged with attempted possession of crack cocaine (count 3), in violation of 21 U.S.C.A. § 846.  Gillis was also charged with making false statements in connection with a firearms purchase (counts 4, 7, 10), in violation of 18 U.S.C.A. § 922(a)(6) (West 2000); with making a false statement to a firearms dealer (counts 5, 8, 11), in violation of 18 U.S.C.A. § 924(a)(1)(A); and with possessing certain firearms in furtherance

7

of the crack cocaine distribution conspiracy (counts 6, 9, 12, 13, 17, 18), in violation of 18 U.S.C.A. 924(c).

At the conclusion of the Government's case-in-chief, the Defendants filed motions under Rule 29 of the Federal Rules of Criminal Procedure for judgments of acquittal based on the sufficiency of the evidence. The district court denied these motions.

The jury returned a guilty verdict convicting Gillis on counts 1, 2, 5, 6, 8, 9, 11, 12, 13, 15, 17, 18; Johnson on counts 1 and 2; and Erik Boyd and Demetrius Boyd on count 1. The jury found Gillis not guilty on counts 4, 7, 10, 14, and 16; Johnson not guilty on counts 14, 15, and 16; and Erik Boyd and Demetrius Boyd not guilty on counts 3 and 16. The district court sentenced Gillis to 1748 months' imprisonment, Johnson to 140 months' imprisonment, Erik Boyd to 38 months' imprisonment, and Demetrius Boyd to 90 months' imprisonment. The Defendants timely noticed appeals.

## II.

"We review de novo a district court's denial of a [Rule 29] motion . . . for a judgment of acquittal." United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006). In evaluating the sufficiency of the evidence, we keep in mind that "a jury verdict 'must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v.

8

Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)).  In the context of a criminal trial, "substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id.  Finally, "we must remain cognizant of the fact that the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Id. (internal quotation marks omitted).

Demetrius Boyd, Eric Boyd, and Lionel Johnson argue that the evidence was insufficient to support their convictions for being part of the crack cocaine distribution conspiracy because much of the evidence came from witnesses, such as felons and drug users, who  were not credible or reliable.  This argument fails because "[w]e do not review the credibility of the witnesses when we evaluate whether there existed sufficient evidence to support a conviction." United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997).  Moreover, the "uncorroborated testimony of one witness . . . may be sufficient to sustain a conviction . . . ." Id.

Gillis contends that the evidence is insufficient to support his convictions for possessing firearms in furtherance of a drug trafficking crime (counts 6, 9, 13) because, although witnesses

testified that Gillis possessed firearms with the expressed intent to take them to Washington, D.C. to trade them for crack cocaine, no evidence was introduced showing that Gillis actually took the firearms to D.C. and traded them for crack cocaine. This argument is without merit. Gillis was charged with possessing firearms "in furtherance of [a drug trafficking crime]," 18 U.S.C.A. § 924(c)(1), with the predicate drug trafficking crime being the overarching crack cocaine distribution conspiracy. Gillis does not dispute that he possessed the firearms identified in these counts; rather, he contends that the evidence does not show that he possessed the firearms "in order to promote or advance the conspiracy to distribute crack cocaine." (Appellants' Br. at 48, 49.) To sustain a conviction under § 924(c)(1) for possession of a firearm, the Government must present "evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). Here, the Government presented such evidence through the testimony of Gillis's wife and girlfriend, which showed that Gillis possessed the firearms with the intent to take them to D.C. to trade them for crack cocaine and that he did, in fact, return with crack cocaine. The evidence therefore showed that Gillis possessed the firearms in furtherance of the crack cocaine distribution conspiracy.

Gillis also challenges the sufficiency of the evidence to support his conviction on count 12 -- possession of a CZ semiautomatic pistol in furtherance of the crack cocaine distribution conspiracy -- because there was no evidence that Gillis ever possessed the pistol. We disagree. The evidence showed that Gillis signed the purchase form for the pistol, and the pistol was found three months later in a car driven by Gillis's co-conspirator Demetrius Boyd. Based on this evidence, the jury reasonably could have concluded that Gillis possessed the pistol because he signed the purchase form and the pistol ended up in his co-conspirator's possession.

Relatedly, Gillis contends that the evidence was insufficient to support his convictions on counts 17 and 18 for possessing firearms in furtherance of the crack cocaine distribution conspiracy because the firearms in those counts were obtained in Gillis's crack-cocaine-for-firearms trades, and, other than receiving the firearms as payment for crack cocaine, there is no evidence showing that the firearms were possessed by Gillis in furtherance of the conspiracy. We conclude that accepting possession of firearms as payment for crack cocaine is possession in furtherance of a drug trafficking crime. Gillis's willingness to accept possession of firearms as payment for crack cocaine furthered and advanced the conspiracy to distribute crack cocaine because it facilitated transactions that might not have otherwise

occurred. See Lomax, 293 F.3d at 705; see also United States v. Frederick, 406 F.3d 754, 764 (6th Cir. 2005) ("[A] defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell does promote or facilitate that illegal sale." (internal quotation marks omitted)).

Gillis contends that the evidence was insufficient to convict him on count 15 -- possession of a sawed off shotgun —- because the jury acquitted him on count 14, which charged him with possessing certain firearms, including the sawed off shotgun, in furtherance of the crack cocaine distribution conspiracy. Again, we disagree. Assuming there was an inconsistency in the jury's verdict, "a defendant cannot challenge his conviction merely because it is inconsistent with a jury's verdict of acquittal on another count." United States v. Thomas, 900 F.2d 37, 40 (4th Cir. 1990) (citing United States v. Powell, 469 U.S. 57 (1984)). Moreover, Edward Roy testified that he traded the shotgun to Gillis for drugs, and Gillis's girlfriend testified that she saw the shotgun around the same time that Gillis had traded crack cocaine for other firearms.

Finally, we reject Gillis's remaining challenges to his firearm convictions. These challenges center on the credibility or inconsistency of the Government's witnesses, but the jury weighed the credibility of the witnesses and resolved the inconsistencies in testimony adversely to Gillis. Burgos, 94 F.3d at 862 ("[T]he jury, not the reviewing court, weighs the credibility of the

12

evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." (internal quotation marks omitted)).

## III.

Demetrius Boyd also contends that the district court abused its discretion by introducing evidence under Rule 404(b) of the Federal Rules of Evidence about two prior arrests of Boyd, in which firearms, and at one of those arrests drugs, were found in his car.

Evidence of prior acts is admissible under Rule 404(b) if the evidence is (1) relevant to an issue other than the defendant's character, (2) necessary to prove an element of the crime charged, and (3) reliable. United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). If the prior act evidence meets these criteria, it may be admitted unless its probative value is "substantially outweighed by confusion or unfair prejudice." Id.

We conclude that the district court properly admitted evidence of Demetrius Boyd's prior arrests. Demetrius Boyd was charged with conspiracy to distribute drugs and with conspiracy to use and carry firearms in furtherance of the drug conspiracy. The district court correctly concluded that possession of drugs and firearms "directly link[ed] him with the conspiratorial design and the unlawful confederation . . . ." (J.A. at 139F.)

13

IV.

Johnson and Eric Boyd appeal their sentences of 140 months' imprisonment and 38 months' imprisonment, respectively. The Defendants were sentenced after the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the district court recognized that the sentencing guidelines were advisory only.


A.

Johnson contends that the district court violated his Sixth Amendment rights because the district court calculated Johnson's advisory sentencing guideline range after finding him responsible for distributing 49 grams of crack cocaine, even though the jury did not find him responsible for a particular amount but found him responsible for distributing between 5 to 49 grams of crack cocaine. This argument is without merit. In United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), we directed district courts to proceed under Booker's remedial scheme by calculating the advisory guideline range after making the appropriate findings of fact. Id. at 546. Therefore, the district court did not violate Johnson's Sixth Amendment rights by determining the drug quantity attributable to him. See United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005) ("The remedial portion of Booker held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that

14

comports with the [S]ixth [A]mendment . . . ." (internal quotation marks omitted)). We therefore affirm Johnson's sentence.

B.

Erik Boyd contends that the district court erred in determining the quantity of drugs attributable to him for purposes of calculating the advisory sentencing guideline range. We review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Allen, 446 F.3d 522, 527 (4th Cir. 2006).

Erik Boyd's Presentence Report (PSR) determined that he was responsible for distributing 1.6 grams of crack cocaine, based on the trial testimony of Calvin Johnson, Mark Holmes, and Edward Roy. The PSR calculated the total amount by adding together Erik Boyd's sales to Calvin Johnson (1 purchase of .20 grams), Mark Holmes (2 purchases of .20 grams), and Edward Roy (5 purchases of .20 grams). Erik Boyd objected to the PSR's calculations, contending that Edward Roy was not a credible witness. Erik Boyd noted that Edward Roy had testified at the preliminary hearing that he bought crack cocaine from Erik Boyd only "once or twice." The district court overruled Erik Boyd's objections to the PSR, concluding that the trial evidence "amply supports" a finding that he sold Edward Roy 1 gram of crack cocaine.

The reliability of Roy's testimony is a credibility determination -- an issue of fact for the district court's determination. United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002). Having reviewed the record, we cannot say that the district court clearly erred in determining that the quantity of drugs attributed to Erik Boyd in the PSR was supported by a preponderance of the evidence.[*]

Eric Boyd also contends that the district court erred in failing to credit him with acceptance of responsibility. Although Boyd elected to go to trial, rather than plead guilty, he relies on an application note for the sentencing guidelines that states, "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." U.S. Sentencing Guidelines Manual § 3E1.1 n.2 (2004). The application note goes further to explain that this occurs when the defendant is asserting and preserving issues "that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or to challenge the applicability of a statute to his conduct)." Id.; see United States v. Holt, 79 F.3d 14, 17 (4th Cir. 1996) (noting that a

---

[*]Erik Boyd does not contend that the Government must prove quantity beyond a reasonable doubt. (Appellant's Br. at 101 ("The government must prove by a preponderance of the evidence the quantity of drugs attributable to a defendant for purposes of sentencing.").)

16

defendant "could obtain a downward adjustment for acceptance of responsibility, even after putting the government through its burden of proving its case at trial, as long as [the defendant] went to trial to preserve issues unrelated to factual guilt"). Here, Boyd's reasons for going to trial -- that the Government alleged that he was responsible for more drugs than he was willing to admit -- is directly related to factual guilt. The district court therefore properly rejected Boyd's claim for acceptance of responsibility because "[u]ntil the government actually proved [Boyd's] guilt, there wasn't the slightest hint of admission on his part." (J.A. at 1249-50.) We affirm Erik Boyd's sentence.

V.

After reviewing the record, we conclude that the evidence was sufficient to support the Defendants' convictions, that the district court did not err in admitting Rule 404(b) evidence of Demetrius Boyd's prior arrest, and that the district court did not err in sentencing Lionel Johnson and Erik Boyd. We therefore affirm the Defendants' convictions and sentences. We dispense with oral argument because the facts and legal conclusions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED