*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 03-1895

JERMAINE RAYNARD FREDERICK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 02-00268—Richard A. Enslen, District Judge.

Argued: August 3, 2004

Decided and Filed: May 5, 2005

Before: BOGGS, Chief Judge; DAUGHTREY, Circuit Judge; and WISEMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Lawrence J. Phelan, Grand Rapids, Michigan, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Lawrence J. Phelan, Grand Rapids, Michigan, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

BOGGS, Chief Judge. Jermaine Frederick was convicted by a federal jury of being a felon in possession of a firearm, possessing marijuana with intent to distribute, and possessing a firearm in furtherance of a drug trafficking offense. He was sentenced to a total of 138 months of imprisonment. Mr. Frederick appeals from his conviction, asserting a variety of trial errors and challenging the sufficiency of the evidence. We conclude that Mr. Frederick's challenges to his conviction are without merit.

Frederick also argues that two enhancements to his sentence under the United States Sentencing Guidelines violated the Sixth Amendment, as interpreted in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). In light of the Supreme Court's decision in *Booker v. United States*, 125 S. Ct.

_____

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

728 (2005), and our recent holding in *Barnett v. United States*, 398 F.3d 516 (6th Cir. 2005), we vacate Frederick's sentence and remand for resentencing.

**I**

The evidence at trial established the following.  On October 31, 2002, Battle Creek, Michigan, police executed a raid on an apartment at 19 Battle Creek Avenue, where they had previously purchased drugs in a controlled buy.  (The raid was pursuant to a search warrant, the validity of which is not in dispute.)  The two bedrooms in the apartment were referred to in the subsequent trial as the north bedroom and the south bedroom.  When the police entered, they saw Frederick emerging from the north bedroom.  Officers ordered him to the ground and handcuffed him, along with several other people who were in the apartment at the time.

The police searched the apartment.  In a closet in the north bedroom, they found a loaded Norinco MAK90 semi-automatic rifle bearing a drum magazine.  Another loaded drum magazine was nearby, on a table.  The officers also found in the north bedroom a scale and several plastic bags of various sizes, up to one gallon, that were later stipulated to contain marijuana.  One bag of marijuana had Frederick's fingerprint on it.  (The rifle did not bear Frederick's fingerprints.)  Some of the marijuana bags were inside a wall safe that contained various documents with Frederick's name on them.  The north bedroom also contained correspondence addressed to Frederick.

In the south bedroom, police found items bearing the name of Hashim Bell, apparently another resident of the apartment.

The police arrested Frederick and searched him.  In his pockets they found keys that fit both the door on the apartment building and cars parked outside of the building.  Frederick later stipulated that, at the time of his arrest, he was a felon who was not allowed to possess firearms. Frederick was indicted and charged with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (Count I); possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count II); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count III).

Frederick's trial began on February 10, 2003.  The government supported its case on the two firearms-related counts with the testimony of seventeen-year-old Randy Turner.  Turner testified that he had provided the MAK90 rifle to Frederick in exchange for $250 cash and a quantity of marijuana with a street value of $250.  By way of explaining how he knew Frederick, and why Frederick came to possess the gun, Turner discussed Frederick's past drug activities.  He testified that he worked for Frederick in packaging and selling crack cocaine, and packaging marijuana, for several months beginning in October 2000.  Turner testified that he had visited the apartment at 19 Battle Creek Avenue in the past.  Turner said that this was Frederick's residence, and the north bedroom was Frederick's bedroom.  He testified that Hashim Bell, the resident of the other bedroom, dealt drugs along with Frederick.

Turner further testified that Frederick had trouble with some of his customers, who believed that he was "shorting" them by providing them with drugs of inferior quality or quantity.  Moreover, Turner reported, Frederick had been robbed in the past by a man named Marco and had attempted to shoot Marco in retaliation.

Turner stated that he had personally supplied Frederick with a variety of handguns in the past.  Turner then testified about the Norinco MAK90 rifle at issue in this case.  He said that he acquired the gun in October 2002, and told Frederick that he had a "big gun" that he thought Frederick would be interested in.  Turner testified that Frederick told him to bring the gun over, which Turner did.  Frederick handled the gun and then negotiated a purchase price with Turner.

Turner wanted $1000, but Frederick dickered him down to $250 in cash and a quantity of marijuana with a street value of $250, which Turner accepted. Frederick then took possession of the gun.

Over the defense's objection, the district court held that the foregoing testimony about Frederick's past drug activities with Turner did not violate the limitations on "other acts" evidence set out in Fed. R. Evid. 404(b).

Turner admitted on direct examination that he was under indictment for a number of drug charges in state court. On cross-examination, Turner further conceded that he was testifying in return for a benefit from the state prosecutor. The defense elicited testimony that Turner and Frederick had encountered each other in jail before the trial, and that Frederick had told Turner that he would subpoena Turner as a witness to say that Turner sold the gun to Bell.

One of the police witnesses called by the government, Battle Creek Detective Allan Betts, confirmed part of Turner's testimony. Detective Betts testified that he had interviewed Turner in the county jail on October 30, 2002 – the day before the raid on the 19 Battle Creek Avenue apartment – and that Turner told him that he had recently sold a MAK90 rifle to Jermaine Frederick.

The defense presented the testimony of sixteen-year-old Ryan Aggers, an acquaintance of Turner and Frederick. Aggers testified that he had seen Turner with the MAK90 rifle, and had been present when Turner asked Frederick about buying the gun. He testified that Frederick said that he did not want to buy the gun and wanted nothing to do with it, and that he told Turner to get it out of his apartment. Aggers admitted under cross-examination that Turner had gotten him into trouble, and that he considered Turner a "fool" who was not his friend.

There was controversy over the jury instructions. The district court gave the following instruction concerning the "in furtherance of a drug trafficking crime" element of Count III, violation of 18 U.S.C. § 924(c):

> In order for you to find that the defendant is guilty of possessing a firearm "in furtherance" of a drug trafficking crime, you must be able to conclude beyond a reasonable doubt that one reason for the defendant's possession of the firearm, not the only reason, but one reason was to somehow advance or further him in committing the drug trafficking crime set forth in Count II . . . .
>
> You can consider several things about that. First, the type of drug activity that was being conducted. Second, the accessibility of the firearm, where was it in relation to drugs? Third, the type of firearm that was involved, we know the type because we have seen Exhibit 44 [the MAK90 rifle] and we have heard testimony about it. Fourth, whether the firearm was stolen, there has been some testimony about that. Fifth, whether it was illegal for the defendant to have a firearm. Well, we know that's true, because he agreed with that. It's illegal for him to have a gun. Six, whether the firearm was loaded or unloaded. We have heard testimony about that. Seventh, location of the gun in relation to the drugs or the drug proceeds, which would be money, of course. And the eighth, when the gun was found in relation to the drug activity that occurred, when it was found, you heard testimony about that and what happened on October 31st.
>
> Those eight things are not exhaustive . . . . These things are intended to help you decide if the defendant's possession of . . . Exhibit 44 was in furtherance of a drug trafficking crime.

This instruction generally followed the written proposed jury instruction that the government had submitted, and the court had adopted, which was drawn from *United States v. Ceballos-Torres*, 218

F.3d 409, 414-15 (5th Cir. 2000), but it added commentary on the evidence the jury had heard. The court then instructed:

> You may also find the defendant guilty of possessing the firearm in furtherance of a drug crime if you conclude beyond a reasonable doubt that he acquired the gun by trading drugs or drug proceeds for the gun. You have heard testimony about that.

The defendant objected to both of these "in furtherance" instructions. First, he argued that the district court's commentary on the evidence threatened to prejudice the jury, by essentially directing a verdict for the government on that element. The district court concluded that the objection had some merit and gave the following curative instruction as soon as the jury returned from a recess:

> . . . I want to comment about [the] instruction which is on page 30 and . . . is labeled "in furtherance." . . . I made comments when I was reading it and said . . . to you, like, we have heard evidence about that, I didn't mean to say to you we have found evidence we believe about that, I simply was reminding you we heard some testimony, you don't have to believe that testimony, and I'm sorry that I even said it. So just look at the written instruction, [which] doesn't have those words in it, it has the words that I want you to pay attention to.

The defendant had an additional objection to the first set of instructions quoted above, which listed potentially relevant considerations in deciding whether the possession was "in furtherance" of a drug crime. The defendant argued that the court's non-exhaustive list of factors so closely followed the evidence in his case that it was prejudicial. This objection was overruled.

The defendant also objected on substantive legal grounds to the second "in furtherance" instruction, which stated that the jury could find Frederick guilty of violating 18 U.S.C. § 924(c) if it found that he had acquired the gun by trading drugs or drug proceeds for the gun. This objection was also overruled.

The defendant's last argument at issue in this appeal pertains to the court's instructions about the nature of actual and constructive possession. The court gave an instruction that more or less followed the government's proposed instruction, namely Sixth Circuit Pattern Instruction 2.10. The court instructed that "possess means to exercise control over something," and that possession could be either actual or constructive. It stated that "constructive possession is when a person does not have physical control over the item, but knowingly can control it any time he wants to." The court gave the example of a car owner who lends his car to another, but retains authority to revoke the loan and "bring the car back" when he wishes. The court also noted, consistent with Instruction 2.10, that possession can be jointly shared by several people. It added that "just being present where something is located does not equal possession," and that it was the government's burden to establish possession.

Frederick requested a further cautionary instruction about the government's burden of proving possession, one that would have adapted language from pattern instructions involving the elements of a conspiracy. Frederick's counsel stated that the requested instruction would make clear that the facts "that defendant simply knew of the conspiracy, was present at times, or associated with members of the group is not enough, even if he approved or acquiesced of what was happening or did not object to it. I would like that defined a little more." The court denied the request.

On February 12, 2003, the jury convicted Frederick on all counts. The district court sentenced him to a total punishment of 138 months of imprisonment, including a 78-month sentence for Count I, concurrent with a 60-month sentence for Count II, and a mandatory 60-month consecutive sentence for violation of Count III (use of a firearm in furtherance of a drug trafficking

offense). This sentence incorporated a two-level enhancement for a prior crime of violence (Frederick was convicted in 1997 of assault with a dangerous weapon), and a two-level enhancement, pursuant to U.S.S.G. § 4A1.2, because the court concluded that the MAK90 rifle that Frederick possessed was stolen.

Frederick now appeals.

## II

We review decisions to admit or exclude evidence for abuse of discretion. *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004). An abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." *Ibid.*

When jury instructions are claimed to be erroneous, we review the instructions as a whole, in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000). Ordinarily, we will not reverse on the basis of an erroneous jury instruction if the error was harmless. *Ibid.*

## A

We first consider Frederick's argument that Turner's testimony should have been excluded under Fed. R. Evid. 404(b). Turner testified that he had worked for Frederick in the latter's crack and marijuana distribution operation, beginning approximately two years before the conduct charged here. This testimony obviously included evidence of "other crimes, wrongs or acts" of a type with a potential for prejudice under Rule 404(b). However, we have recognized an exception to the prohibitions of Rule 404(b) that extends to *res gestae* or "background" evidence. To fall within this exception, evidence must "consis[t] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). "Proper background evidence has a causal, temporal, or spatial connection with the charged offense." *Ibid.*

Turner's testimony qualifies as admissible background evidence. It dealt with events that were inextricably related to the government's theory of the case on Count I, possession of a firearm by a felon, and Count III, possession of a firearm in furtherance of a drug trafficking crime. Turner explained that some of Frederick's drug customers were angry at him for shorting them, and testified that he had provided guns to Frederick to enable the latter to protect himself. He added that Frederick had actually been robbed in the past by a man named Marco, and had tried to strike back at Marco by shooting him. In order to explain his knowledge of these events, Turner had to testify about the nature of his interactions with Frederick. Turner's testimony as a whole helped "complete the story" of his sale of the MAK90 to Frederick – which was part of the conduct underlying the charged offenses here. It had at least a "causal" and "spatial" connection to the charged offense. *See ibid.*

Moreover, Rule 404(b)'s limits on admissibility do not extend to evidence offered to show, *inter alia*, "motive." Fed. R. Evid. 404(b). Courts have held that evidence of drug dealing is admissible to show a motive to possess firearms illegally. *United States v. Smith*, 292 F.3d 90 (1st Cir. 2002); *United States v. Fuller*, 887 F.2d 144, 147 (8th Cir. 1989). Here, Turner's testimony about Frederick's prior drug sales was highly probative, direct evidence of Frederick's motive to possess the MAK90 found in his closet and, thus, of Frederick's guilt of Counts I and III. It was therefore also admissible under Rule 404(b) directly, as well as under the "background evidence" exception to that rule.

**B**

Frederick devotes the most effort on appeal to challenging the propriety of the district court's instructions on possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c).

**1**

As Frederick concedes, it is not improper for a trial court to comment to the jury on the evidence. "In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." *United States v. Blakeney*, 942 F.2d 1001, 1013 (6th Cir. 1991) (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)). The judge may "analyze and dissect the evidence, as long as [the judge] does not distort or add to it." *Ibid*. However, if the judge comments on the evidence, he or she "must do so with great care and may not unduly prejudice the jury." *United States v. Martin*, 740 F.2d 1352, 1357 (6th Cir. 1984). Truly serious errors of this sort may be incurable, and may automatically require reversal. *Ibid*. In *Martin*, this court suggested that reversal of a conviction would be required if the jury had overheard the trial judge's side remark to counsel that, even under the defendant's own testimony, "he is guilty." *Ibid*. It remanded for an evidentiary hearing on this factual question. *Ibid*. Likewise, in *United States v. Yates*, 553 F.2d 518, 520-21 (6th Cir. 1977), reversal was necessary when the judge commented in open court that an accused bank robber's purported confession made "clear" that "this Defendant did in fact admit his participation in this bank robbery," when in truth, the defendant's principal defense was a claim that the purported confession was invalid.

Here, some of the parenthetical remarks about the state of the evidence that the district judge made when he read through his first "in furtherance" instruction appear to have been improper, though they were not as flagrant as the remarks in *Martin* or *Yates*. They tended, to varying degrees, to suggest that some of the factors tending to support a conviction were undisputed, when in truth the defendant had at least attempted to contest them. For example, the court stated that "we know the type of firearm" that "was involved," because "we have heard testimony about it." With respect to the factor of whether a gun was found close to "drug proceeds," the court added: "which would be money, of course." Probably the most troublesome remark was the one that accompanied the eighth factor listed: "when the gun was found in relation to *the drug activity that occurred*, when it was found, you heard testimony about *that* and *what happened* on October 31st." (Emphases added.)

In a close case, with no curative instruction, such remarks might raise a question as to whether reversal was required. However, here, the district court gave a prompt and explicit curative instruction that stressed to the jury that they were the ultimate fact finders and that they were not required to accept any testimony as true. We conclude that the instruction was sufficient to eliminate any danger that the jury might draw an improper conclusion from the court's prior remarks.

Frederick offers one other challenge to the district court's instructional list of factors that suggest a violation of § 924(c), but it is meritless. He contends that the non-exclusive list read by the district court (which adopted the instruction proposed by the government) so closely matched his own case that it was prejudicial. But the list of factors that the district court read was simply drawn, almost word for word, from a passage in *United States v. Ceballos-Torres*, 218 F.3d 409 (5th Cir. 2000). And, we have approved the *Ceballos-Torres* passage, in close paraphrase, in the § 924(c) case of *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001). Hence, this argument fails.

**2**

Frederick next argues that the district court misstated the law in the second part of its § 924(c) instruction, when it told the jury: "You may . . . find the defendant guilty of possessing the firearm in furtherance of a drug crime if you conclude beyond a reasonable doubt that he acquired the gun by trading drugs or drug proceeds for the gun." Because the evidence did indicate that Turner sold Frederick the MAK90 rifle in exchange for cash and marijuana, this instruction reflected a possible theory under which the jury could have convicted Frederick of Count III (in addition to the more straightforward theory, which the evidence clearly supported, that Frederick kept the weapon to bolster and protect an ongoing drug operation).

In the 1990s, there developed a split among the federal circuits as to whether exchanges of drugs and guns could, without more, violate 18 U.S.C. § 924(c). *See United States v. Cox*, 324 F.3d 77, 83 & n.2 (2d Cir. 2003) (discussing the diverging authorities). At that time, § 924(c) only criminalized the "use" of a firearm "during or in relation to" a drug crime. Applying this version of the statute, the Supreme Court held in *Smith v. United States*, 508 U.S. 223 (1993), that a defendant who traded his gun in return for drugs had "used" the firearm in relation to a drug crime. *Id.* at 228. In *Bailey v. United States*, 516 U.S. 137 (1995), the Court clarified its construction of "use" by holding that it required "more than mere possession of a firearm by a person who commits a drug offense." *Id.* at 143. However, the Court did not disturb *Smith*'s holding, concluding that "bartering" one's firearm, as in *Smith*, was a sufficiently active employment of it to constitute "use." *Id.* at 147-48.

We took a restrained view of § 924(c) in the aftermath of *Bailey*, holding in *United States v. Warwick*, 167 F.3d 965 (6th Cir. 1999), that a defendant who accepted a shotgun from an undercover officer, who urged it on him at the last minute as consideration for a pre-arranged sale of marijuana, had not "used" the firearm within the meaning of § 924(c). *Id.* at 975-76; *accord United States v. Layne*, 192 F.3d 556, 569-71 (6th Cir. 1999) (holding that defendant did not "use" a Colt revolver when police undercover agent convinced defendant to accept the gun along with three kilograms of cocaine, for which defendant paid cash; defendant never mentioned a desire for a gun when he set up the drug transaction). Our cases emphasized the question of whether it was government agents, rather than the defendant, who "introduced the gun into the transaction." *Warwick*, 167 F.3d at 976. We also focused on whether the defendant "affirmatively utilized" the firearm in connection with a drug sale. *Id.*; *Layne*, 192 F.3d at 570. Frederick argues that under *Warwick* and *Layne*, merely "trading drugs or drug proceeds" for a gun, as the district court instructed below, is not enough to support a conviction under § 924(c).

However, in 1998, Congress changed the language of § 924(c), somewhat broadening its reach. *Warwick* and *Layne* dealt with the older version of the statute. The new version, which applies here, prohibits not only "us[ing]" a firearm "during or in relation to" a drug trafficking crime, but also simply "possess[ing]" a firearm "in furtherance of" such a crime. The Second Circuit has stated that this new language is likely to obviate the previously existing circuit split and to reach cases with facts like Frederick's: "For defendants charged under § 924 (c) after this amendment, trading drugs for a gun will probably result in" a conviction. *Cox*, 324 F.3d at 83 n.2.

We interpreted the new "in furtherance of" language of § 924(c) in *United States v. Mackey*, holding that the "term 'furtherance' should be understood in its ordinary or natural meaning," which is "a helping forward: advancement, promotion." 265 F.3d at 460-61. Put more plainly, "the weapon must promote or facilitate the crime." *Id.* at 461. While the new language broadens the statute by extending it to some cases of simple "possess[ion]," we held that the accompanying "in furtherance of" requirement contemplates a somewhat closer relation to a drug crime than the parallel "in relation to" language that accompanies the "use" provision of the statute. *Id.* at 462. We observed that not all possession of firearms by a drug trafficker is in furtherance of a drug crime; there must

be a "specific nexus" between the possession and the drug crime. *Ibid.* In *Lawrence,* we held that an "unsolicited gift" of a firearm to a defendant, even if it accompanied the delivery of a drug shipment that the defendant had requested, did not constitute possession "in furtherance of" that drug transaction. 308 F.3d at 631.

Here, however, we conclude that acquisition of a firearm in exchange for drugs is a sufficient "specific nexus" between the drugs and the guns to constitute possession "in furtherance of" the drug sale. Thus, the district court's instruction was proper. As a matter of logic, a defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell *does* "promote or facilitate" that illegal sale. *Mackey*, 265 F.3d at 461. If the defendant did not accept possession of the gun, and instead insisted on being paid fully in cash for his drugs, some drug sales – and therefore some drug trafficking crimes – would not take place.

Also, while the particular facts of Frederick's drugs-for-gun transaction with Turner are not directly relevant to the propriety of the legal instructions given here, we note that the evidence in this case suggested that Frederick took a more active role in "introduc[ing] the gun into the transaction" than was the case in *Warwick* or *Layne*. While it was Turner who first mentioned to Frederick that he had a military rifle for sale, Turner did so in the context of a previous connection with Frederick, during which Frederick had bought weapons from Turner on several occasions. Moreover, Frederick responded positively to the mention of the rifle and asked Turner to bring it over. He then dickered with Turner and convinced him to take marijuana in partial trade for the gun.

**3**

In its general instructions to the jury, the district court defined possession as "exercis[ing] control over something." It instructed that "constructive possession is when a person does not have physical control over the item, but knowingly can control it any time he wants to." The court cautioned that "just being present where something is located does not equal possession."

Frederick contends that this was error. We disagree. The district court's instruction was unexceptionable. We have defined constructive possession in the following terms: "A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and intention at any given time to exercise dominion and control over a thing is then in constructive possession of such property." *United States v. Wolfenbarger*, 426 F.2d 992, 994-95 (6th Cir. 1970). Frederick tries to argue that he was entitled to the particular cautionary instruction he requested, borrowed from conspiracy cases, which might perhaps have given slightly fuller expression to the notion that mere presence is not sufficient to establish actual or constructive possession. However, as long as the district court's instructions accurately state the law, a defendant is not entitled to the choice of words he requests. *Thompson v. Underwood*, 407 F.2d 994, 997 (6th Cir. 1969). Frederick tries to argue that he should have received his instruction because it is a "defense" – he calls it the "mere presence defense," *see, e.g.*, Appellant Br. at 48 – but this is not an affirmative defense, just a different way of describing the limits of the statutory language, which the district court's instruction had already adequately explained.

**C**

In his final challenge to his convictions, Frederick claims that the evidence of guilt was constitutionally insufficient to sustain the jury's verdict. This argument is frivolous. As discussed *supra*, the evidence of Frederick's guilt of Count III was not merely sufficient, but overwhelming. The same is true of Count I (being a felon in possession of firearm). In light of the amount of marijuana found in Frederick's bedroom, the same is also true of Count II (possession with intent

to distribute marijuana).  Moreover, Frederick concedes that he did not renew a motion for a judgment of acquittal at the close of all evidence.  Accordingly, reversal is improper unless "a manifest miscarriage of justice" would result from affirming the conviction.  *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992).  It would not.

### III

Pursuant to this court's order, Frederick and the government have filed supplemental briefs on the applicability of *Blakely v. Washington*, 124 S. Ct. 2531, to his sentence.  However, since then the Supreme Court settled the issue in *Booker v. United States*, 125 S. Ct. 728 (2005), which altered the Sentencing Guidelines to make them advisory.  In *Barnett*, 398 F.3d 516, we determined that cases on direct appeal should be remanded for resentencing unless the record "contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime."  *Id.* at 529 (quotations omitted).  As there is no such evidence here, we vacate Frederick's sentence and remand for resentencing.

### IV

For the foregoing reasons, Frederick's convictions are AFFIRMED.  However, we VACATE Frederick's sentence and REMAND for resentencing in light of *Booker*, 125 S. Ct. 728.