**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0739n.06
Filed: December 4, 2008

**No. 07-6165**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Hershel O. McCaleb | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

**Before: NORRIS, ROGERS, and KETHLEDGE, Circuit Judges.**

**ROGERS, Circuit Judge.** Hershal McCaleb appeals his conviction of being a felon in possession of a firearm and a felon in possession of ammunition. McCaleb seeks reversal of his conviction on the ground that the evidence presented at trial was insufficient to support the jury's verdict. No reversal is warranted, because the prosecution's direct, circumstantial, and forensic evidence was adequate to support the verdict. McCaleb also seeks a new trial because the district court allowed the prosecution to introduce evidence of his unrelated drug-dealing activities and because the district court allowed the prosecution to introduce a videotape not previously produced to the defense. Neither decision was an abuse of the district court's discretion. McCaleb was therefore properly convicted.

**I.**

On October 17, 2006, officer Mike Riddle of the Knoxville Police Department was patrolling near the Austin Homes housing project. Shortly after noon, Officer Riddle heard numerous gunshots coming from inside the housing complex. He immediately proceeded to the scene.

Eyewitnesses to the shooting, including the victim Akeem McDowell and his twelve-year-old cousin Thomas Boatwright, testified that McCaleb and McDowell were involved in a brief physical altercation shortly before the shooting. McDowell testified that McCaleb left the scene of the altercation, walked to his mother's home, and reemerged shortly thereafter. Several minutes later, McDowell heard shots, looked up, and realized McCaleb was shooting at him. McDowell testified that he saw a shot hit the ground in front of him and heard shots whizzing by him. He later found a bullet hole in his pants, which were introduced at trial. Boatwright also testified that he saw McCaleb shoot at McDowell.

When Officer Riddle arrived on the scene of the shooting, he saw a black male wearing a blue ball cap, blue sweat pants, and a shirt that was either dark blue or black. As soon as the man saw Officer Riddle in his marked police car, the man fled the scene. Officer Riddle pursued the suspect in his car, notifying the dispatcher of his pursuit. At one point, Officer Riddle lost sight of the suspect, but continued to the group of buildings between which the suspect had fled. When Officer Riddle turned into the parking lot, he saw the back door of apartment 322 swing shut. Officer Riddle checked hiding places in the immediate vicinity and determined that if the suspect had continued to flee he would either be in Officer Riddle's line of sight or would encounter other officers who were now closing in on the area. Officer Riddle then approached the back door of

apartment 322. While securing the back door, he could not see the front door. Several other officers arrived shortly thereafter, at which point Officer Riddle knocked loudly on the back door and announced his presence.

The officers found four people in the apartment—the occupant of the apartment Marland Cates, Cates's cousin, Cates's six-year-old child, and McCaleb. Both Cates and his cousin were over six feet tall and weighed over 300 pounds. McCaleb, by contrast, is 5'10" and weighs 185 pounds. Only McCaleb resembled the suspect whom Officer Riddle pursued into the apartment. Cates testified that shortly after the shooting and just before the officers gained admittance to the apartment, he heard the back door slam and then the door of one of the upstairs bedrooms slam. He thought it was his twelve-year-old son, whom Cates had called to come inside when he heard the shots. Cates testified that he did not know McCaleb was in his home.

When the officers first encountered McCaleb, he was standing at the top of the staircase wearing only boxers. Upon searching the apartment, the officers found a weapon in the upstairs closet and a pair of wet, crumpled blue sweat pants lying as if quickly discarded in a nearby bedroom. It was a rainy day, so the clothes of the fleeing suspect would have been damp. During the ensuing encounter, McCaleb told the officers that he had been in the apartment all night with his girlfriend. He testified at trial, however, that he came to Austin Homes right around the time of the shooting to visit his mother and to attend a Bible study.

The color of McCaleb's pants turned out to be an important issue at trial. Officer Riddle testified that, during the course of the arrest, McCaleb asked to put his pants back on and identified them as being the blue ones. McCaleb, on the other hand, attempted to establish that he wore gray pants while another person, never found by the police, wore blue pants. McCaleb gave the following explanation of how he came to be in Cates's apartment uninvited and how the true culprit allegedly evaded capture. McCaleb testified that when he arrived at the Austin Homes complex, he encountered a man named "Meet to Meet" fleeing from the police. Meet to Meet was dressed according to Officer Riddle's description of the suspect, while McCaleb was not. Because McCaleb was banned from Austin Homes and subject to arrest if found there, he fled with Meet to Meet into Cates's home. McCaleb said he stayed near the back door and briefly lost sight of Meet to Meet. Shortly thereafter, Meet to Meet left through the front door, while McCaleb remained in the apartment. A few moments later, the police arrived. The defense's case relied on McCaleb's testimony that he wore gray sweat pants on the day of the arrest, and on an intake form from the county jail that listed gray sweat pants among McCaleb's belongings. The district judge allowed the prosecution, in its rebuttal case, to introduce a police videotape showing McCaleb wearing blue sweat pants while being placed in the police car.

A crime lab unit recovered a .380 Cobra semi-automatic pistol and a magazine fully loaded with FC ammunition from the upstairs closet of Cates's apartment. In addition, the unit recovered five spent FC .380 shell casings from the shooting site. Forensic testing on the weapon and spent

casings led the state's firearms identification specialist to determine with 100 percent certainty that the bullets found at the shooting scene were fired from the gun recovered from Cates's apartment.

McCaleb was indicted for one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. He stipulated to the previous felony and interstate commerce elements of the charges. During the prosecution's case-in-chief, the young boy who identified McCaleb as the gunman testified that McCaleb was a local drug dealer. McDowell, the victim of the shooting, also testified that he had observed McCaleb approaching cars and conducting transactions. A jury found McCaleb guilty of both the firearm and the ammunition charges. He now appeals, claiming the evidence was insufficient to allow a reasonable juror to find him guilty, that the district court improperly admitted evidence of his previous drug-dealing activity, and that the district court improperly admitted the police videotape used in the prosecution's rebuttal case. None of these contentions has merit.

## II.

## A.

When viewed in the light most favorable to the prosecution and resolving all issues of credibility in favor of the jury's verdict, the evidence presented at trial was sufficient to support the verdict. The prosecution presented evidence that placed McCaleb in the street of the Austin Homes housing project discharging a gun, placed him in Cates's apartment near a Cobra .380 semiautomatic

pistol shortly thereafter, and linked the Cobra pistol to the shooting. The deferential standard of review applied to jury verdicts does not require more.

The standard of review on appeal for determining the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Childs*, 539 F.3d 552, 558 (6th Cir. 2008). The prosecution presented sufficient evidence that McCaleb fired shots at McDowell before seeking refuge in Cates's apartment, and that the gun recovered from Cates's apartment was the same gun that was used in the shooting. McCaleb contends that, when the defendant is not found with the gun in hand and the prosecution relies on evidence that the defendant possessed the firearm in question at a time prior to arrest, the prosecution must present some evidence describing the firearm previously seen in the defendant's possession that would link it to the firearm eventually recovered. While such evidence may help the prosecution's case, the absence of such evidence is not fatal to a jury's verdict. Rather, this circuit has explained that "circumstantial evidence alone can sustain a guilty verdict and that to do so, circumstantial evidence need *not* remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984).

Arguments that center on the prosecution's use of direct versus circumstantial evidence or that pit one witness's testimony against another's misconstrue the standard of review. McCaleb asserts that various prosecution testimony was either self-serving to the witness, uncorroborated, or

contradicted by defense testimony. However, this appellate court does not "weigh the evidence presented [at trial], consider the credibility of witnesses, or substitute [its] judgment for that of the jury" when determining whether sufficient evidence supports the verdict. *United States v. M/G Transport Services, Inc.*, 173 F.3d 584, 588-89 (6th Cir. 1999). Instead, the appellate court "draw[s] all available inferences and resolve[s] all issues of credibility in favor of the jury's verdict." *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (citing *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir.1998)). Where the prosecution's evidence is not "facially insubstantial or incredible," this court does not judge the credibility of the witnesses or the weight of the evidence. *United States v. Welch*, 97 F.3d 142, 151, 148 (6th Cir. 1996).

**B.**

The district court's decision to admit evidence of McCaleb's other bad acts under Federal Rule of Evidence 404(b) was not an abuse of discretion. *Mack v. United States*, 258 F.3d 548, 553 (6th Cir. 2001) (standard of review). The district court's decision to admit evidence of drug dealing in this case met each of the three requirements for admitting evidence of prior bad acts. "First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as to whether the 'other act' is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the 'other acts' evidence is more prejudicial than probative under Rule 403." *Id.* (citing *United States v. Gessa*, 971 F.2d 1257, 1261-62 (6th Cir.1992)).

First, although the court did not make an explicit finding that the prior bad acts occurred, the evidence in the record supports the court's implicit determination to that effect. The district judge treated the evidence as true in his discussion with the parties, and, given McCaleb's criminal background and two witnesses' testimony either that he dealt drugs or engaged in behavior consistent with dealing drugs, the judge's implicit determination that McCaleb engaged in street-level drug dealing was justified.

Second, the district court properly determined that the evidence was introduced for a legitimate purpose. The government sought to introduce the evidence in order to show motive to possess a firearm, to refute McCaleb's claim that someone else possessed the gun found in Cates's apartment, and to explain why eyewitnesses to the shooting were familiar with McCaleb and could therefore readily identify him. As the district court noted, this court held in *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005), that "evidence of drug dealing is admissible to show a motive to possess firearms illegally." It is true that *Frederick*, unlike the instant case, involved a charge of possession of a firearm in furtherance of a drug trafficking crime, and the other acts introduced there were inextricably related to the prosecution's theory of the case. Nonetheless, so long as the evidence is introduced for a proper purpose, Rule 404(b) does not limit its use to crimes of the same sort or crimes committed at the same time as the other acts to be introduced. The evidence of McCaleb's prior drug-dealing activity, although not admissible to prove bad character, was admissible as proof of motive to possess a gun, as well as for the other purposes the prosecution

mentioned. The district court did not abuse its discretion in finding that the evidence was introduced for those proper purposes rather than to prove bad character.

Third, the district court did not abuse its discretion in determining that background evidence of drug dealing was highly probative of the crime charged and that the balance under Rule 403 should be struck in favor of admission. In making such a determination, "we must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (internal citations and quotations omitted). When viewed in the light most favorable to the prosecution, the value of showing McCaleb's occupation as a drug dealer in order to show motive to possess a gun was considerable. The district court focused on Rule 403's requirement that prejudice must *substantially* outweigh probative value before otherwise admissible evidence should be excluded. The district court's determination that the danger of unfair prejudice did not substantially outweigh the evidence's probative value was not an abuse of discretion.

Where the district court admits evidence under Rule 404(b), the court must provide a limiting instruction to the jury if such an instruction is requested. *United States v. Fraser*, 448 F.3d 833, 839 (6th Cir. 2006). The record is this case does not indicate that McCaleb requested a limiting instruction, and McCaleb does not raise this issue on appeal.

**C.**

The district court did not abuse its discretion when it admitted a previously undisclosed video showing McCaleb wearing dark sweat pants at the time of his arrest. *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991) (standard of review).

The district court properly ruled that the videotape was not discoverable under Federal Rule of Criminal Procedure 16(a)(1)(E) as an item material to preparing the defense. As the district court reasoned under the Supreme Court's holding in *United States v. Armstrong*, 517 U.S. 456, 462-63 (1996), the evidence was not material to the defense because the evidence supported, rather than contradicted, the Government's case. McCaleb attempted to refute the Government's case by introducing evidence that he wore light-colored clothing on the day of the arrest, and the Government was probably aware prior to trial that McCaleb would pursue such a strategy. In admitting the evidence as part of the Government's rebuttal case, the district court gave weight to the fact that the videotape merely confirmed what various other pieces of Government evidence already established and to the fact that the Government did not introduce the videotape as part of its case-in-chief. The district court is entitled to engage in such reasoning, and to exercise its discretion accordingly. The district court did not abuse its discretion when it determined that the videotape was not material to preparing a defense and therefore was not discoverable under Rule 16(a)(1)(E).

Neither did the district court abuse its discretion when it ruled that the videotape was admissible even though it might have been discoverable under Rule 16(a)(1)(B)(i) as a relevant

recorded statement by the defendant. On the videotape, McCaleb can be heard saying, "My wallet. He got my I.D. Give her my wallet. Tell Alisha to get my I.D. Get my I.D., my wallet, my phone, and my money." The district court, assuming that this statement might have been relevant and discoverable, fashioned a remedy that would allow the government to present the evidence but would prevent the jury from hearing the objectionable statement. The district court admitted the videotape on the condition that the Government mute the sound.

Even if there was a violation of Rule 16(a)(1)(B)(i), exclusion was not necessarily required. In exercising its discretion to fashion remedies for Rule 16 violations, district courts are encouraged not to use the sanction of exclusion where a less drastic remedy will suffice. *United States v. Maples*, 60 F.3d 244, 246-47 (6th Cir. 1995). A district court should consider "(1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess." *Maples*, 60 F.3d at 247. In this case, there is no evidence of bad faith, it is not clear that the delay in learning of this "statement" caused any prejudice to the defendant, and the defense declined an offered continuance. Moreover, the remedy of muting the sound effectively excluded the objectionable aspect of the videotape. Rather than abusing its discretion by admitting the videotape evidence with the sound muted, the district court properly executed its duty to fashion an appropriate remedy that avoided unnecessary exclusion of relevant evidence.

Finally, cumulative error analysis is not relevant to this case, because McCaleb has not shown that any individual ruling was error. Under cumulative error analysis, "a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). The errors accumulated, however, must indeed be errors, not simply rulings adverse to the defendant's position. *See id.* Neither the admission of other bad acts evidence nor the admission of the videotape of McCaleb's arrest was error. There are, therefore, no unfair effects to accumulate.

**III.**

For the foregoing reasons, McCaleb's conviction is affirmed.