**File Name:  11a0439n.06**

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**Case No. 09-1632**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

***Jun 30, 2011***

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff-Appellee,    ) | |
| ) | **ON APPEAL FROM THE** |
| v.    ) | **UNITED STATES DISTRICT** |
| ) | **COURT FOR THE EASTERN** |
| RICCARDO TOLLIVER,    ) | **DISTRICT OF MICHIGAN** |
| ) | |
| Defendant-Appellant.    ) | |
| ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾    ) | |

**BEFORE:  BATCHELDER, Chief Judge; MARTIN and SUTTON, Circuit Judges.**

**ALICE M. BATCHELDER, Chief Judge.**  Defendant Riccardo Tolliver was charged in

and pleaded guilty to a seven-count superceding information, which included two counts of use of

a firearm during and in relation to a drug trafficking crime and possession of a firearm in furtherance

of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  In the plea agreement, Tolliver

stipulated to the facts underlying all of the counts of the information, and preserved his right on

appeal to challenge the sufficiency of the information as to the two § 924(c) counts only.  We find

the information sufficient and we AFFIRM the district court.

**FACTS**

Tolliver was involved in two exchanges of drugs for guns between marijuana traffickers in

Canada and a gun dealer in the United States.  In both transactions, Tolliver served as the

middleman, facilitating the exchanges, supplying cash, and paying for transportation expenses.  He

remained in contact with the various parties throughout each step of the transactions, directing their activities.

In early February 2005, a group of Canadian marijuana traffickers ("Traffickers") contacted Tolliver, a United States citizen living in Canada, asking him to arrange a deal in which the Traffickers would provide marijuana and receive guns in return. Tolliver agreed. He contacted Lamarcus Jones, a gun dealer in the United States, and Jones agreed to trade guns in exchange for the marijuana. Tolliver sent Jones money with which to make the initial purchase of the guns (sixteen in all) and to offset various expenses incident to acquiring and transporting the guns. Jones had several individuals buy the guns and remove the serial numbers. On February 8, 2005, Jones, Anthony Lightfoot, and two women drove to Detroit in a rented Ford Explorer; the guns were hidden in the vehicle's spare tire. Tolliver spoke with Jones and Lightfoot via telephone and instructed Lightfoot to drive into Canada, first to a certain grocery store in Windsor, and then to the parking lot of a department store in Toronto, to make the exchange. Jones and the women waited in Detroit.

Lightfoot drove the Explorer to the designated parking lot, where he met Tolliver, who was in a black Hummer SUV. The operation hit a snag when they were unable to remove the spare tire from the Explorer, so, on Tolliver's instructions, Lightfoot took the SUV to the auto service department of the department store where the service technicians were able to remove the tire. Tolliver paid for the service. Tolliver then took the spare tire filled with guns and gave Lightfoot a spare tire filled with marijuana, which Lightfoot placed in the back of the Explorer. Pursuant to his agreement with the Traffickers, Tolliver turned over to them the spare tire filled with guns.

Lightfoot did not fare so well; customs officials stopped him at the United States border and seized the marijuana. Jones called Tolliver and informed him of the seizure.

In March 2005, Tolliver called Jones and arranged a similar exchange, this one involving a single Canadian marijuana trafficker named Rawa Akram. Again, Tolliver instructed Jones to purchase several handguns, and supplied Jones with the initial cash for the purchases, and, following Tolliver's instructions, Jones purchased seven handguns. This time, Tolliver had a woman named Shamika Jennings pick up a quantity of marijuana from Akram, the drug trafficker, in Canada. Tolliver instructed Jennings to drive from Ontario to Detroit and then to southern Ohio, and to meet Jones at a certain hotel. Tolliver paid for Jennings's hotel room and informed Jones of the plan. At the hotel, Jennings gave the keys to her car to Jones, who took the car, removed the marijuana from it, replaced the marijuana with the guns, and returned the car to Jennings. Jennings then drove the car back to Detroit, and on to Ontario, Canada. Along the way, she was in communication with Tolliver, who relayed to Akram information about her journey. Once in Ontario, Jennings delivered the firearms to Akram at a designated location.

Following a lengthy investigation, the United States indicted Tolliver, Jones, Lightfoot, and numerous others on drugs and firearms charges. Eventually, the government issued a seven-count superceding information against Tolliver only. Two of those counts charged violations of 18 U.S.C. § 924(c); each of those two counts charged both the use of a firearm in relation to a drug crime *and* possession of a firearm in furtherance of a drug crime. Tolliver correctly argued before the district court that the two counts were duplicative because each count included an indictment for two separate crimes — both "use" *and* "possession." However, the district court held that the duplicative

3

charges would be cured by proper jury instructions and a special verdict form. In any event, Jones was sentenced for only one violation of 18 U.S.C. § 924(c) for each count, and he does not raise the issue on appeal.

Tolliver filed a motion to dismiss Counts 4 and 6, arguing that he could not be found guilty of either the "use" or "possession" prong of § 924(c). The district court denied his motion, finding that Tolliver could be found guilty of either "use" or aiding and abetting in the "possession" of firearms under the statute. Tolliver pleaded guilty to Counts 4 and 6, along with other various crimes, and was sentenced to a total of 384 months in custody. The plea agreement preserved his right to appeal the sufficiency of the indictment.

Tolliver filed this timely appeal.

## ANALYSIS

We review the sufficiency of an information de novo. *United States v. Combs*, 369 F.3d 925, 934 (6th Cir. 2004).

Under 18 U.S.C. § 924(c)(1)(A), "any person who, during and in relation to any . . . drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime[, be subject to a mandatory minimum sentence]." The statute criminalizes two distinct offenses: "use" and "possession." *See Combs*, 369 F.3d at 933. A defendant can be convicted under § 924(c) if he either (1) uses a firearm during and in relation to a drug trafficking crime; or (2) possesses a firearm in furtherance of a drug trafficking crime.

In the context of trades involving drugs and guns, the two types of exchanges (guns for drugs and drugs for guns) and the two prongs of § 924(c) ("use" and "possession") combine to create four possible offenses. Possibility 1: a person who supplies guns and receives drugs in exchange "uses" the guns. Possibility 2: a person who supplies guns and receives drugs in exchange "possesses" the guns. Possibility 3: a person who supplies drugs and receives guns in exchange "uses" the guns. Possibility 4: a person who supplies drugs and receives guns in exchange "possesses" the guns.

In *Smith v. United States*, 508 U.S. 223, 237 (1993), the Supreme Court held that Possibility 1 can be the basis for a conviction. That is, the Court held that a defendant who furnishes firearms in exchange for drugs may be found guilty of using a firearm during and in relation to a drug trafficking crime under § 924(c). In *Watson v. United States*, 552 U.S. 74, 83 (2007), the Court closed the door on Possibility 3. That is, the Court held that a defendant who furnishes drugs in exchange for firearms does not "use" the firearms during and in relation to a drug trafficking crime.

This circuit has spoken on Possibility 4, holding that acquiring a firearm in exchange for drugs is a crime under § 924(c). In *United States v. Frederick*, 406 F.3d 754 (6th Cir. 2005), we held that:

> [A]cquisition of a firearm in exchange for drugs is a sufficient "specific nexus" between the drugs and the guns to constitute possession "in furtherance of" the drug sale. . . . As a matter of logic, a defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell *does* "promote or facilitate" that illegal sale. If the defendant did not accept possession of the gun, and instead insisted on being paid fully in cash for his drugs, some drug sales — and therefore some drug trafficking crimes — would not take place.

*Id.* at 764 (internal citation omitted). Several of our sister circuits have agreed with us. *See United States v. Robinson*, 627 F.3d 941, 955 (4th Cir. 2010); *United States v. Gurka*, 605 F.3d 40, 44 (1st

Cir. 2010); *United States v. Gardner*, 602 F.3d 97, 103 (2d Cir. 2010); *United States v. Doody*, 600

F.3d 752, 755 (7th Cir. 2010); *United States v. Mahan*, 586 F.3d 1185, 1188–89 (9th Cir. 2009);

*United States v. Luke-Sanchez*, 483 F.3d 703, 706 (10th Cir. 2007).[1]

We agree with the district court that Tolliver can be found guilty of two counts of violating

§ 924(c) (one from February and one from March) because he aided and abetted the drug traffickers

in their "possession" of firearms "in furtherance of" drug trafficking crimes. In the February

transaction, the Traffickers can clearly be found guilty of violating the "possession" prong under

*Frederick*. They had drugs; they traded them for guns. They gave up a large quantity of marijuana

and received sixteen firearms in exchange. In the same way, in the March transaction, Akram

provided seven pounds of marijuana and received seven firearms in exchange.

Acting as the middleman in each transaction, Tolliver aided and abetted the Traffickers in

February and Akram in March. A defendant can be found guilty of aiding and abetting under the

possession prong of § 924(c) if the defendant knew that an accomplice possessed a gun in

furtherance of a drug trafficking crime, and the defendant acted with intent to assist or influence the

commission of the drug trafficking crime. *See United States v. Gardner*, 488 F.3d 700, 712 (6th Cir.

2007). Here, Tolliver certainly knew that in each case the Traffickers and Akram possessed the guns

— in February he personally delivered the guns to the Traffickers and in March he directed the

delivery of the guns to Akram. In each instance, Tolliver most certainly acted intentionally to assist

in the commission of the drug trafficking crimes. He contacted the gun dealer, fronted money for

---

[1]We leave for another day consideration of Possibility 2 — whether a person who supplies guns and receives drugs in exchange "possesses" the guns "in furtherance of" a drug trafficking crime and is guilty of a violation of § 924(c).

gun purchases, paid for transportation expenses, gave specific delivery instructions to various parties, kept the parties informed as to the progress of the transactions, and, during the February transaction, even handled both the drugs and the guns himself. The indictment was sufficient under an aiding and abetting theory of the "possession" prong of § 924(c).

Tolliver argues that because he was in actual possession of the guns during the February transaction, he was the principal of any "possession" crime, and he cannot be found guilty of aiding and abetting the Traffickers. In essence, he claims that because at one time he possessed the guns, the Traffickers never did and never could possess them, and therefore, he could not have aided and abetted them. Tolliver's argument fails as a matter of logic. Indeed, in the February transaction, Tolliver had actual possession of the guns hidden in the spare tire. He took the spare tire filled with guns from Lightfoot and put it in his Hummer. It is true that once he gave the guns to the Traffickers, they possessed them, but the fact that Tolliver had possession of the guns at a given point in time in no way forecloses the possibility that another party—the Traffickers, in this case—could possess the guns at a later point in time. Possession of personal property, such as a firearm, is generally transferrable. Tolliver's suggestion that possession of an object at one point in time prevents all other parties, for all time, from later possessing that object is absurd.[2]

Tolliver suggests that in light of *Watson v. United States*, 552 U.S. 74 (2007), we should reexamine our holding in *Frederick*. He argues that the "possession" prong is satisfied only where

---

[2]Furthermore, constructive possession and joint possession allow for multiple people to possess the same object *at the same time*. *See United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997) (defining constructive possession as "the power and intention at a given time to exercise dominion and control over an object") (citation and quotation marks omitted); *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (noting that "the law recognizes joint possession" of firearms).

a firearm is possessed "as a weapon" and not as a medium of exchange in a bartering transaction.

We decline Tolliver's invitation. *Watson* in no way undermines the reasoning of *Frederick*. If anything, it strengthens *Frederick*'s holding. In *Watson*, the court addressed Possibility 3 (person who supplies drugs in exchange for guns uses the guns), and held that the word "use" was to be given its "ordinary or natural meaning." *Watson*, 552 U.S. at 79. Where a gun serves as consideration in exchange for drugs, it is not "used." As the Court stated, "[a] seller does not 'use' a buyer's consideration." *Id.* (quoting *United States v. Westmoreland*, 122 F.3d 431, 436 (7th Cir. 1997)).[3] If we give "possession" its ordinary meaning, a seller most certainly "possesses" a buyer's consideration at the completion of the transaction. That is, when the transaction is over the seller no longer possesses the consideration he brought to the deal; rather, the seller now possesses the consideration the buyer brought, and vice versa. Their "use" of that newly acquired consideration is immaterial. Here, Tolliver may have possessed the guns in February (and constructively possessed the guns in March), but once the transaction was complete, the drug dealers who traded for the guns then possessed the guns, in the ordinary sense of the word. *Watson* does not undermine, but rather strengthens *Frederick*'s holding.

Because we find that the indictment was sufficient as to the aiding and abetting theory of the "possession" prong, we need not address alternative grounds for upholding the indictment—that is,

---

[3] Of course, *Smith v. United States*, 508 U.S. 223, 237 (1993), had examined the inverse situation, holding that a seller "uses" a gun when he utilizes the gun as a medium of exchange to obtain drugs. *Watson* is completely consistent with *Smith*. In *Smith*, it could be properly said that a seller "uses" his own consideration when he trades it to acquire something else. As the D.C. Circuit illustrated, "[W]hen a person pays a cashier a dollar for a cup of coffee in the courthouse cafeteria, the customer has not used the coffee. He has only used the dollar bill." *United States v. Stewart*, 246 F.3d 728, 731 (D.C. Cir. 2001).

whether the indictment was sufficient to charge Tolliver with violating the "possession" prong as

a principal, or violating the "use" prong.

## CONCLUSION

For these reasons, we **AFFIRM** the order of the district court.