**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 17, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ODI LUKE-SANCHEZ, also known as
"Manuel,"

      Defendant - Appellant.

No. 06-4141

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:05-CR-205-01-TS)**

---

Stephen R. McCaughey, McCaughey & Metos, Salt Lake City, Utah, for
Defendant - Appellant.

Diana Hagen, Assistant United States Attorney (Brett L. Tolman, United States
Attorney, with her on the brief) Office of the United States Attorney, Salt Lake
City, Utah, for Plaintiff - Appellee.

---

Before **LUCERO**, **McKAY**, and **HOLMES**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

      Odi Luke-Sanchez challenges his conviction for possession of a firearm in

furtherance of a drug trafficking crime, stemming from a March 23, 2005

transaction in which Luke-Sanchez sold methamphetamine to an undercover agent

and a confidential informant in exchange for guns and cash. He challenges his conviction on two grounds: First, he argues that his underlying conduct, trading drugs for guns, does not satisfy the "in furtherance" prong of § 924(c); second, he contends the district court's jury instructions improperly precluded a factual finding by the jury on an essential element of § 924(c). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **AFFIRM**.

**I**

Following his arrest, a methamphetamine dealer named Kenneth Jervis agreed to assist the government in identifying his suppliers. While monitoring his calls, the government identified a supplier named "Manuel," who it was later determined was Luke-Sanchez. During one of those calls, Luke-Sanchez asked Jervis about the possibility of obtaining firearms. Following Luke-Sanchez's request, the government set up a sting operation during which an undercover agent (the "agent") would trade Luke-Sanchez guns in exchange for methamphetamine.

On March 23, 2005, Jervis called Luke-Sanchez to tell him a friend had brought some guns he was interested in trading for drugs to Jervis' apartment. About an hour later, Luke-Sanchez arrived at Jervis' apartment with two associates – Lorenzo Perez-Ordorica and Alberto Lopez-Pallan. After a few minutes of casual conversation, the agent asked Luke-Sanchez, "Do you have what I need?" When Luke-Sanchez replied that he did, the agent told him that he

had what Luke-Sanchez needed. Luke-Sanchez responded, "pistolas."[1] At that point, all five men headed to the bedroom, where the agent motioned to a toolbox sitting near the bed. The agent handed Luke-Sanchez a Glock 40 millimeter pistol and a Colt .45 caliber pistol that were inside the box. While examining them, Luke-Sanchez asked if the guns were stolen.

Both guns passed Luke-Sanchez's inspection, at which point he asked the agent how much he wanted for them. The agent responded that he wanted "one bag" (one ounce of methamphetamine). After further discussion between Luke-Sanchez and his associates, he counter-offered three-quarters of an ounce, which the agent accepted. Perez-Ordorica then left the apartment and returned with a larger quantity of methamphetamine. Luke-Sanchez and his associates sold most of the methamphetamine to Jervis and the agent for cash, but three-quarters of an ounce was handed over for the guns. Upon leaving the building with the guns and cash, the three men were arrested.

All three were charged with possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A) and possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Luke-Sanchez alone was also charged with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Although both of Luke-Sanchez's

---

[1] All three of the men spoke rudimentary English, and the agent spoke "eighth grade Spanish."

associates pled guilty to a single count of possession with intent to distribute, Luke-Sanchez chose to proceed to trial.

At the government's request, the district court provided the jury with the following instruction on the required proof under § 924(c): "Regarding Count III, you may find the defendant guilty of possessing a firearm in furtherance of a drug trafficking crime if you conclude beyond a reasonable doubt that he acquired a gun by trading drugs for it." Luke-Sanchez objected to this instruction on the ground that "trading drugs for a gun is not 'use of the gun' in violation of 924(c)," but his objection was overruled. The jury convicted him on all counts. He was sentenced to 235 months' imprisonment on Counts I and II, and 60 months' imprisonment on Count III, to run consecutively, for a total of 295 months.

**II**

We review the district court's interpretation of a statute de novo. United States v. Cordova-Arevalo, 456 F.3d 1229, 1231-32 (10th Cir. 2006). Upon a timely challenge, we review a district court's jury instructions "de novo . . . to determine whether, considering the instructions as a whole, the jury was misled." United States v. Curtis, 344 F.3d 1057, 1068 (10th Cir. 2003). A jury instruction that improperly describes an element of the charged crime is reviewed for harmless error. Neder v. United States, 527 U.S. 1, 15 (1999). A guilty verdict following an erroneous instruction will be upheld if "it appears beyond a

reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. (quotation omitted).

**A**

We must first determine whether, as a matter of law, Luke-Sanchez's conduct supports a conviction under § 924(c). Prior to 1998, the government needed to show that "during and in relation to any crime of violence or drug trafficking crime [the defendant] . . . use[d] or carrie[d] a firearm" to convict under § 924(c). See Bailey v. United States, 516 U.S. 137, 138 (1995) (quoting § 924(c)(1)). This statutory language had engendered a lively circuit split on the question of whether trading drugs for guns constitutes "use" of a firearm. A bare majority of our sister circuits held that it does, generally grounding their holding in the Court's statement in Bailey that "'use' certainly includes . . . bartering," 516 U.S. at 148. See United States v. Cotto, 456 F.3d 25, 28 (1st Cir. 2006); United States v. Sumler, 294 F.3d 579, 583 (3d Cir. 2002); United States v. Ramirez-Rangel, 103 F.3d 1501, 1506 (9th Cir. 1997); United States v. Ulla, 94 F.3d 949, 956 (5th Cir. 1996); United States v. Cannon, 88 F.3d 1495, 1509 (8th Cir. 1996). A minority of circuits interpret the statute (and Bailey) differently, holding that "use," in the bartering context, requires some active employment of the firearm by the defendant, beyond merely accepting the gun as payment. See United States v. Montano, 398 F.3d 1276, 1283 (11th Cir. 2005); United States v. Stewart, 246 F.3d 728, 731-32 (D.C. Cir. 2001); United States v. Warwick, 167

F.3d 965, 975-76 (6th Cir. 1999); <u>United States v. Westmoreland</u>, 122 F.3d 431, 435-36 (7th Cir. 1997).

We have not had occasion to reach the question, and post-<u>Bailey</u> legislation has made it less likely we will have the opportunity to do so. Congress amended the relevant statutory text in 1998 to also criminalize possession of a firearm "in furtherance of" a drug trafficking crime. § 924(c)(1)(A); An Act To Throttle Criminal Use of Guns, Pub. L. No. 105-386, sec. 1(a)(1), § 924(c)(1)(A), 112 Stat. 3469, 3469 (1998). Whereas the pre-1998 language required courts to determine whether a defendant "used" a firearm, the amended language explicitly criminalizes simple possession "in furtherance of" a drug crime. Luke-Sanchez does not contest his possession of the two pistols, leaving the narrower question of whether trading drugs for guns "further[s]" the crime of drug trafficking. For substantially the same reasons articulated by the Sixth Circuit in <u>United States v. Frederick</u>, 406 F.3d 754, 764 (6th Cir. 2005), we are satisfied that it does.

We have previously held that "possession in furtherance, requires the government to show that the weapon furthered, promoted or advanced a drug trafficking crime." <u>United States v. Robinson</u>, 435 F.3d 1244, 1251 (10th Cir. 2006) (quotations omitted). This requires that the government establish some nexus between the firearms and the underlying drug trafficking crime. <u>See</u> <u>Frederick</u>, 406 F.3d at 764. When he traded three-quarters of an ounce of methamphetamine for two pistols, Luke-Sanchez accepted the pistols as a form of

payment. But for the pistols, the crime of drug trafficking would not have occurred, at least with respect to that quantity of methamphetamine for which the pistols were payment. In this sense, the pistols were akin to any other form of currency used to pay for illegal drugs, all of which further and promote drug trafficking by sustaining the drug market. Accordingly, the nexus between the drugs and the guns used to pay for them is sufficient, as a matter of law, to meet the "in furtherance" prong of § 924(c). In other words, trading drugs for guns "further[s], promote[s] or advances a drug trafficking crime." Robinson, 435 F.3d at 1251.

**B**

Counsel for Luke-Sanchez switched tack at oral argument, focusing the court's attention on the alleged error in the district court's § 924(c) jury instruction. By instructing the jury that "you may find the defendant guilty of possessing a firearm in furtherance of a drug trafficking crime if you conclude beyond a reasonable doubt that he acquired a gun by trading drugs for it," Luke-Sanchez contends the court precluded the jury from making a factual determination on the "in furtherance" prong. However, Luke-Sanchez's objection at trial to that instruction rested on a different theory – that "trading drugs for a gun is not 'use' of the gun in violation of 924(c)." As such, only that ground for objection – that trading drugs for guns is not punishable under the statute – is

properly preserved on appeal.[2]  See Comcoa, Inc. v. NEC Tels., Inc., 931 F.2d 655, 660 (10th Cir. 1991) ("A party's objection to a jury instruction must be sufficiently clear such 'that the grounds stated in the objection [are] obvious, plain, or unmistakable.'") (quoting Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1514 (10th Cir. 1984)) (alteration in original).

Even if Luke-Sanchez had preserved this issue, we are convinced that it lacks merit.  Although Luke-Sanchez's brief must be carefully parsed to untangle this argumentative thread, he appears to claim that under certain circumstances a defendant might trade drugs for guns without furthering a drug trafficking crime. Two hypothetical scenarios were suggested:  one in which the defendant receives the guns gratis, and another in which the guns are proactively introduced into the transaction by the government.  Therefore, he alleges, it was a mistake of law for the district court to instruct the jury that trading drugs for guns per se violates § 924(c).

Notwithstanding that the district court's instruction in this case was permissive, neither scenario implicates the instruction as written.  With regard to the first, no juror could reasonably confuse being given a gun with acquiring one by "trading drugs for it."  See Frederick, 406 F.3d at 764 (distinguishing United

_____

[2] Although both Luke-Sanchez and the district court demonstrated some confusion about the government's required showing under the current version of § 924(c) by focusing on the "use" prong, Luke-Sanchez's objection was sufficient to preserve a challenge under the "possession" prong.

States v. Lawrence, 308 F.3d 623, 631 (6th Cir. 2002)). With regard to the second hypothetical, such a circumstance might give rise to a defense of entrapment, but does not cast doubt on the instruction itself. An entrapment defense hinges on whether the defendant was induced to commit the crime, not on whether the charged conduct is punishable under the relevant statute. See United States v. Russell, 411 U.S. 423, 435 (1973) ("Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense but was induced to commit them by the Government."). In such cases, the proper course is to argue entrapment at trial (an argument Luke-Sanchez did not make, and which finds no basis in the record), and request the jury be instructed on entrapment accordingly. See United States v. Nguyen, 413 F.3d 1170, 1178 (10th Cir. 2005).

**III**

The judgment of the district court is **AFFIRMED**.