08-4793-cr(L), 08-5268(con)
United States v. Gardner/Gladden

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2009

(Argued: January 6, 2010                    Decided:  March 10, 2010)

Docket Nos. 08-4793-cr(L), 08-5268(con)

————————

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

EDWARD GARDNER, also known as Alex and KENROY GLADDEN, also known as Kenroy Flowers,
also known as Michael Richardson.

*Defendants-Appellants*.

————————

B e f o r e :

FEINBERG and KATZMANN, *Circuit Judges*,

CASTEL, *District Judge.**

————————

Appeal from Judgments of the United States District Court for the Southern District of

New York (Jed S. Rakoff, *Judge*), dated September 25, 2008 (Gardner) and November 14, 2008

(Gladden), following a jury trial, convicting defendants of conspiracy, drug and firearm offenses

---

* The Honorable P. Kevin Castel, of the United States District Court for the Southern
District of New York, sitting by designation.

and sentencing Gardner to 180 months' imprisonment and Gladden to 300 months' imprisonment. We hold that when a defendant acquires a firearm using drugs as payment he possesses the firearm in furtherance of a drug trafficking crime. We accordingly affirm the judgment of the district court.

————————

JENNIFER E. BURNS, Assistant United States Attorney (Michael D. Maimin, Assistant United States Attorney, *of counsel*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

BEVERLY VAN NESS (Curtis J. Farber, *of counsel*), New York, NY, *for Defendant-Appellant Edward Gardner*.

DEVIN MCLAUGHLIN, Langrock, Sperry & Wool, LLP, Middlebury, VT, *for Defendant-Appellant Kenroy Gladden*.

————————

KATZMANN, *Circuit Judge*:

The threshold issue presented on appeal is whether acquiring a firearm using drugs as payment constitutes possessing that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Defendant-Appellant Edward Gardner appeals from the September 25, 2008 judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*). Defendant-Appellant Kenroy Gladden appeals from the November 14, 2008 judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*). Gardner and Gladden were convicted, following a jury trial, of conspiracy, drug and firearm offenses, including a violation of 18 U.S.C. § 924(c)(1)(A), which prohibits the possession of a firearm in furtherance of a drug trafficking crime. At trial, the district court instructed the jury

2

that it could find a violation of this provision if it unanimously concluded beyond a reasonable doubt that the defendants "acquired the firearm by paying for it with drugs involved in the conspiracy."

On appeal, Gardner and Gladden contend that acquiring a firearm using drugs as payment does not constitute possession of that firearm in furtherance of a drug trafficking crime, and therefore the district court erroneously instructed the jury and there was insufficient evidence to support their convictions under 18 U.S.C. §(c)(1)(A). We hold that acquiring a firearm using drugs as payment constitutes possessing that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). We therefore conclude that the district court properly instructed the jury and that there was sufficient evidence to support defendants' convictions.[1]

## I

This case began with an undercover investigation into crack cocaine sales in the Bronx. Undercover agents purchased crack cocaine from Najir Williams, who became a cooperating witness in the case against Gardner and Gladden. At trial, Williams testified to the relationship between Gardner and Gladden and their drug trafficking activities, and the jury concluded beyond a reasonable doubt that Gardner and Gladden were involved in a drug trafficking conspiracy.

Relevant to this appeal, Williams testified about an occasion when Gardner and Gladden acquired two firearms with drugs. On that occasion, Williams testified that he, Gardner and

_____

[1] In this opinion, we address only Gardner and Gladden's challenges to their convictions under 18 U.S.C. § 924(c)(1)(A). In a companion summary order, we address and reject Gardner and Gladden's remaining challenges to their convictions, but in light of intervening precedent, we vacate their sentences and remand their cases for resentencing.

Gladden were sitting in Gladden's SUV when a Pontiac car pulled up next to them and parked. A few minutes later, a man entered the passenger seat of Gladden's SUV with a black backpack. The man asked for $600 for two guns that were in the backpack. Gladden stated that he did not want to pay cash for the guns, but instead wanted to give the man "some work," meaning some crack cocaine, for the guns. The man responded that he "[didn't] know about that" and that he wanted some cash, at which point he put the guns back inside the backpack, told them to give him a minute and exited the vehicle. Williams then saw the man enter the Pontiac and noticed that there was another occupant in the driver's seat of that vehicle. When the man returned to Gladden's SUV with his backpack, he stated "all right, we will take work for the guns," meaning that he would take the drugs for the guns. The man then pulled out the guns and handed them to Gladden. Gladden stated that he would give the man an onion, meaning an ounce of crack cocaine, for the guns, and the man agreed. The man then exited Gladden's SUV and got back inside the Pontiac.

After the man exited the SUV, Gladden turned to Gardner and instructed him to get an onion, and Gardner went inside the house and returned with the drugs. The man then entered Gladden's SUV again and Gladden handed him the drugs. Presumably because an ounce of crack cocaine was worth more than $600, Gladden told the man that, after they finished selling the drugs, they should give him back $200. The man then pocketed the drugs and exited Gladden's SUV, and Gladden handed the firearms to Gardner and asked him to "put these things up for me." Before Gardner and Williams left, Gladden got a call on his phone. Williams noticed that the driver of the Pontiac was also on the phone. Williams testified that the man on the phone told Gladden that he did not want crack cocaine and that he wanted powder cocaine

4

instead. Gladden responded "that that will take a minute" and that he had to "go around the block to deal with that." Gardner and Williams then exited the vehicle and went inside their house where they inspected the guns. There is no evidence in the record regarding whether Gladden actually swapped the crack cocaine for power cocaine.

Gardner and Gladden were charged with violating 18 U.S.C. § 924(c)(1)(A), which provides that "[a]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," shall be subject to a penalty in addition to that for the underlying crime. At the conclusion of their trial, the district court instructed the jury as follows:

> [T]he government must prove that the defendant you are considering possessed this firearm for the purpose of furthering the conspiracy charged in Count 1, that is, to help in carrying out the conspiracy. In this regard, the firearm does not have to have been actually used. The defendant must be shown to have possessed the gun for the purpose of playing some role, even if small, in the furtherance of the conspiracy.
>
> Also you may [find] that a given defendant possessed the firearm in furtherance of the conspiracy if you unanimously conclude beyond a reasonable doubt that he acquired the firearm by paying for it with drugs involved in the conspiracy.

The jury convicted Gardner and Gladden of possessing firearms in furtherance of a drug trafficking crime.

## II

18 U.S.C. § 924(c)(1) has not always contained the "possession in furtherance" prong. Until 1998, this provision applied only to a person who "uses or carries a firearm" "during and in relation to any . . . drug trafficking crime." 18 U.S.C. § 924(c)(1) (1998); *see* Pub. L. No. 105-

386, 112 Stat. 3469 (1998). The Supreme Court interpreted this provision as it related to a barter transaction in *Smith v. United States*, 508 U.S. 223 (1993), and *Watson v. United States*, 552 U.S. 74, 79 (2007). In *Smith*, the Court concluded that a defendant who received drugs in exchange for a firearm "used" the firearm "during and in relation to . . . [a] drug trafficking crime." 508 U.S. at 228-30. *Watson* regarded the reverse transaction, whether a defendant who receives a gun in exchange for drugs "uses" the gun "during and in relation to . . . [a] drug trafficking crime." 552 U.S. at 76. The Court concluded that the defendant did not. The Court noted that "[w]ith no statutory definition or definitive clue, the meaning of the verb 'uses' has to turn on the language as we normally speak it." *Id*. at 79. Examining the statutory provision in that light, the Court stated that while "[t]he Government may say that a person 'uses' a firearm simply by receiving it in a barter transaction, . . . no one else would." *Id*. Distinguishing *Smith*, the Court analogized to a boy who trades an apple to get a granola bar, and concluded that it is sensible to say that the boy "uses" the apple in the transaction, but not that he "uses" the granola bar. *Id*.; *see also id.* at 81 (citing "common speech's understanding that the first possessor is the one who 'uses' the gun in the trade").

In 1998, Congress amended section 924(c)(1) to add the "possession in furtherance" prong after the Supreme Court concluded in *Bailey v. United States* that possessing a firearm near the scene of drug trafficking did not constitute "use" of a firearm during and in relation to a drug trafficking crime because mere possession does not amount to active employment of a firearm. *See* 516 U.S. 137, 143 (1995). Following the amendment, a defendant violates section 924(c)(1)(A) if he "possesses a firearm" "in furtherance of . . . [a] drug trafficking crime." *See* Pub. L. No. 105-386, 112 Stat. 3469 (1998); *Watson*, 552 U.S. at 77 n.3 (2007). Congress did

6

not remark upon, and the Supreme Court has not addressed, whether a barter transaction in which a defendant acquires a firearm using drugs as payment falls under this possession prong.[2]

### III

On appeal, Gardner and Gladden challenge both the district court's jury instruction and the sufficiency of the evidence supporting their conviction for possessing a firearm in furtherance of a drug trafficking crime. The same legal question underlies both challenges: Whether acquiring a firearm using drugs as payment constitutes possessing that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). "Where, as here, the defendant[s] timely challenge[] the district court's jury instructions on a legal issue in proceedings below, this Court reviews the validity of the district court's jury instructions *de novo*." *United States v. Tureseo*, 566 F.3d 77, 83 (2d Cir. 2009). Likewise, we review a claim of insufficient evidence *de novo*. *United States v. Yannotti*, 541 F.3d 112, 120 (2d Cir. 2008).

This Court has not squarely addressed whether acquiring a firearm with drugs constitutes possession of a firearm in furtherance of a drug trafficking crime. We have, however, addressed this question in *dicta* in *United States v. Cox*, 324 F.3d 77 (2d Cir. 2003). The transaction at issue in *Cox* preceded the 1998 amendment adding the possession prong to section 924(c)(1). In *Cox*, the question presented was whether a defendant's acceptance of a gun as collateral for the purchase price of drugs constituted "use" of a firearm during or in relation to a drug trafficking crime. *Id*. at 78-79. We held that it did because the defendant "took the gun *as collateral* for the cash price of drugs, not in barter of one commodity for another." *Id*. at 84. The decision then

---

[2] *Watson* acknowledged that the statute had been amended to include the possession prong after the case had been initiated. 552 U.S. at 83.

went on to describe the then-pending split among the Courts of Appeals regarding whether the simple receipt of guns for drugs would constitute "use," concluding that this split might dissipate in light of Congress's amendment to add the possession prong. *Id*. at 84 n.2. We stated, "[f]or defendants charged under § 924(c) after this amendment, trading drugs for a gun will probably result in such possession." *Id*.[3]

This conclusion has been squarely reached by several other Courts of Appeals. *See United States v. Mahan*, 586 F.3d 1185, 1189 (9th Cir. 2009) ("When a defendant accepts a gun as payment for his drugs, his sale—and thus his crime—is incomplete until he receives possession of the firearm. We fail to see how possession that completes a drug trafficking offense is not possession 'in furtherance of' a drug trafficking offense."*)*; *United States v. Luke-Sanchez*, 483 F.3d 703, 706 (10th Cir. 2007) (holding that trading drugs for guns constitutes possession in furtherance of a drug trafficking crime under subsection 924(c)(1)); *United States v. Boyd*, 209 F. App'x 285, 290 (4th Cir. 2006) (per curiam) ("We conclude that accepting possession of firearms as payment for crack cocaine is possession in furtherance of a drug trafficking crime."); *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir. 2005) ("As a matter of logic, a defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell *does* promote or facilitate that illegal sale." (internal quotation marks omitted)); *see also United States v. Dolliver*, 228 F. App'x 2, 3 (1st Cir. 2007) (recognizing the "growing consensus" that trading drugs for weapons constitutes possession in furtherance of a drug trafficking crime under section 924(c)(1)(A)); *cf. United States v. Bobb*, 471 F.3d 491, 496 (3d

---

[3] In referring to this dicta, *Watson* stated, "[t]his view may or may not prevail, and we do not speak to it today . . . ." 552 U.S. at 83.

Cir. 2006) ("In this Circuit, bartering crack cocaine for a gun is not a violation of 18 U.S.C. § 924(c)(1)(A) if the defendant did not actively solicit the barter of drugs for a gun.").

Against our suggestion in *Cox* and this large body of persuasive precedent, Gardner and Gladden raise two challenges. First, they argue that the act of acquiring the gun with drugs (the drug trafficking crime in this case) *precedes* possession and therefore cannot establish the crime of possession "in furtherance of" a drug trafficking crime. They emphasize the Supreme Court's admonition in *Watson* that we need to give statutory language its commonly used meaning—"as we normally speak it," *see* 552 U.S. at 79, and contend that when one does so, it is clear that whether a defendant possesses a firearm in furtherance of a drug trafficking crime cannot depend on whether he acquired the firearm with drugs or cash.

A plain language reading, however, leads to the opposite conclusion. First, Gardner and Gladden did possess the guns. Not only is this conclusion obvious, but we have held that "receipt of guns for drugs . . . involves the 'possession' of a firearm" for the purposes of section 2D1.1(b)(1) of the Sentencing Guidelines. *See United States v. Smythe*, 363 F.3d 127, 129 n.1 (2d Cir. 2004). Second, Gardner and Gladden's possession of the guns *furthered* a drug trafficking crime. But for their possession of the guns, they would not have sold the crack cocaine to the gun seller. *See Mahan*, 586 F.3d at 1188 (citing "the common sense proposition that when one accepts a gun in exchange for drugs, the gun is an integral part of the drug sale because without the gun— the 'currency' for the purchase— the drug sale would not take place."); *Frederick*, 406 F.3d at 764 ("As a matter of logic, a defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell *does* promote or facilitate that illegal sale." (internal quotation marks omitted)). This case is readily distinguishable from

9

*Watson*, because while it is not natural to say that a person who trades drugs for guns "uses" the guns in the transaction, it is natural to say that a person who trades drugs for guns "possesses" the guns "in furtherance of" the transaction.

Moreover, the nexus is particularly close in this case because Gardner and Gladden acquired the guns for one ounce of crack cocaine, and, presumably because this quantity of crack cocaine was worth more than the guns, instructed the seller of the guns to pay them $200 after raising the money by selling the crack cocaine. Thus, their possession of the guns promoted further drug trafficking in addition to the transaction itself.

Gardner and Gladden also argue that their case is distinguishable from *Luke-Sanchez*, *Frederick*, and *Boyd* because the focus of the transaction here was on acquiring guns, not selling drugs. The facts show that the gun seller preferred cash, but eventually agreed to accept drugs; thus, according to Gardner and Gladden, that the drugs became a part of the deal was a mere fortuity and any relation the transaction had to drugs was incidental and not furthered by possession of the guns. They urge this Court to adopt a test based on the "focus of the transaction" and contend that *Watson* provides support for their argument that the purpose and direction of the transaction matter.

As an initial matter, we do not agree with Gardner and Gladden that in *Luke-Sanchez* and *Frederick*, the focus of the transaction was the selling of drugs and not the acquisition of guns. In *Luke-Sanchez*, the transaction originated when the defendant "asked . . . about the possibility of obtaining firearms." 483 F.3d at 704. Likewise, in *Frederick*, the gun seller desired cash for the transaction and the defendant "dickered with [the gun seller] and convinced him to take marijuana in partial trade for the gun." 406 F.3d at 764. *Mahan* also regarded a transaction

10

which began when a person "offered to sell several stolen firearms" to the defendant. 586 F.3d at 1186. More importantly, the statutory language does not support the distinction Gardner and Gladden urge. Whether a person who acquires a gun with drugs does so in order to obtain the gun (as Gardner and Gladden did) or to sell drugs, that person furthers the sale of the drugs by possessing the gun because, in either case, but for the possession of the gun, the sale of drugs would not have occurred. We decline to adopt a "focus of the transaction" test.

We join our sister circuits in concluding that when a defendant acquires a firearm using drugs as payment, he possesses that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). We therefore conclude that the district court appropriately instructed the jury that they could find that a given defendant possessed a firearm in furtherance of the drug conspiracy if the jury unanimously concluded beyond a reasonable doubt that the defendant acquired a firearm with drugs involved in the conspiracy. We also conclude that there was sufficient evidence to support Gardner and Gladden's convictions under this statute because a rational trier of fact could have found that they acquired firearms using drugs as payment. *See United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009).

**IV**

For the foregoing reasons and the reasons stated in the companion summary order, we **AFFIRM** the district court's judgment of conviction.

11