# United States Court of Appeals
## For the First Circuit

No. 08-2584

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM GURKA,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Boudin, Circuit Judges.

Angela G. Lehman for the appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Peter F. Neronha, United States Attorney, and Kenneth P.
Madden, First Assistant United States Attorney, were on brief for
appellee.

May 12, 2010

**LYNCH**, **Chief Judge**.    William Gurka appeals from the denial of his motion to withdraw that portion of his guilty plea pleading to gun charges related to a cocaine trafficking crime. See United States v. Gurka, No. 07-118-S (D.R.I. July 7, 2008). His arguments turn on a single legal question: whether a defendant who exchanges drugs for guns "possesses" the guns "in furtherance" of a drug trafficking crime within the meaning of 18 U.S.C. § 924(c)(1)(A).    A plain reading of the statute's text shows that he does, and we join the consensus among circuit courts in so holding and in rejecting the defendant's claims that United States v. Watson, 552 U.S. 74 (2007), alters the law on this issue.

I.

We begin with the undisputed facts, to which Gurka agreed when he pleaded guilty.    On June 26, 2007, Gurka met with an undercover agent of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") in the agent's parked car, beside a highway in Smithfield, Rhode Island.    Gurka had previously expressed interest in purchasing "a cold throw-away .380 caliber pistol."  At the June 26 meeting, the agent showed Gurka three guns: (1) a Bryco model 38, .380 caliber semi-automatic pistol, (2) a Lorcin .380 caliber pistol with an obliterated serial number, and (3) a High Standard .22 caliber semi-automatic pistol with a silencer attached.  Gurka examined the guns and the silencer and informed the agent that he

-2-

wanted to buy all of them. In exchange for these items, Gurka agreed to pay the agent three bags of cocaine and $400 cash.

Gurka first paid the agent the $400 cash. The agent then brought all three guns to Gurka's nearby pickup truck. Gurka placed the guns in the truck and paid the agent two bags of cocaine,[1] weighing a combined 4.97 grams. Gurka was then arrested.

Gurka waived his <u>Miranda</u> rights and wrote a statement, admitting to the purchase of the guns and silencer for cocaine and cash. He also admitted that he had additional cocaine and guns in his home. A search of Gurka's home later that day revealed an additional 39.57 grams of cocaine, a small quantity of marijuana, and seven guns, including two loaded pistols.

On October 12, 2007, Gurka pled guilty to a six-count information, pursuant to a written plea agreement. This appeal concerns Count Six,[2] which charged Gurka with knowing possession of a firearm—the Bryco semi-automatic pistol[3]—in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

---

[1]     Since Gurka only had two bags of cocaine at that time, the agent agreed that Gurka could pay the third bag later.

[2]     Counts One through Five charged Gurka with drug violations, including the June 26, 2007, distribution offense, the cocaine found in Gurka's home, and three earlier drug sales.

[3]     The government opted not to charge Gurka with possession of the other two guns involved in the barter, the silencer, or the guns found at his home. Had Gurka been convicted of possessing a gun "equipped with a . . . silencer" in furtherance of a drug crime, he would have faced a mandatory thirty-year prison sentence. 18 U.S.C. § 924(c)(1)(B)(ii).

Count Six carried a five-year mandatory prison sentence. Id. § 924(c)(1)(A)(i). When asked by the district court if he agreed with the facts described above, Gurka confirmed that he did. The district court set January 4, 2008, as the date for sentencing.

A few weeks before Gurka's scheduled sentencing, the Supreme Court decided Watson v. United States, 552 U.S. 74 (2007). The decision concerned a defendant who had pled guilty to bartering drugs for guns under a different prong of § 924(c)(1)(A), which provides a mandatory-minimum sentence for offenders who "use[]" a firearm "during and in relation to any  . . . drug trafficking crime." Id. at 76 (quoting 18 U.S.C. § 924(c)(1)(A)). The Supreme Court held that receiving a firearm in a trade for guns did not constitute "use" of the weapon within the ordinary meaning of the word, and so did not fall within that language of the statute. Id. at 83. The Court explicitly declined to address whether such a transaction would constitute "possession in furtherance of a drug crime" under the prong of the statute at issue here. Id.

Gurka moved to vacate his guilty plea as to Count Six on January 28, 2008, urging that Watson "ha[d] a direct impact on the viability of the charge." Gurka's written motion conceded that the defendant in Watson was charged under a separate provision of § 924(c)(1)(A) and that the Supreme Court's decision in that case addressed entirely different statutory text. Nonetheless, Gurka argued that "with the advent of the Watson opinion," the plain

meaning of "possession" and "in furtherance" precluded his liability under the statute. On this basis, Gurka urged that he should be allowed to withdraw his guilty plea and that the district court should dismiss Count Six as an inappropriate application of § 924(c)(1)(A)'s "possession in furtherance" provision.

The district court heard argument from both sides on Gurka's motion at a hearing on March 27, 2008. On July 7, 2008, the district court issued a written order, rejecting Gurka's argument and denying the motion to vacate his guilty plea. See Gurka, slip op. at 5.

On December 3, 2008, the district court sentenced Gurka to a below-guidelines sentence of six months imprisonment on Counts One through Five, and a consecutive five-year mandatory-minimum sentence on Count Six.

This appeal followed.

## II.

During the interval between the acceptance of a guilty plea and sentencing, "the district court should liberally allow withdrawal of guilty pleas for any 'fair and just reason.'" United States v. Mescual-Cruz, 387 F.3d 1, 6 (1st Cir. 2004) (quoting Fed. R. Crim. P. 11(d)(2)(B)). We review the district court's denial of a defendant's motion to withdraw for abuse of discretion on preserved claims. Id. Unpreserved issues are reviewed for plain error. Id. Where, as here, the district court's ruling involves

an issue of statutory interpretation, we review the district court's legal conclusions de novo.  United States v. Padilla-Galarza, 351 F.3d 594, 597 n.3 (1st Cir. 2003).

A.        The Record on Appeal

On appeal, Gurka revisits his argument before the district court, with a new twist: he now claims that his case should be remanded so that the district court may consider further evidence,[4] which Gurka claims would have altered the judge's ruling "in light of Watson's concerns."  This material was not presented to the district court, is in violation of Fed. R. App. P. 10, and is not properly before us.  E.g., United States v. Rosario-Peralta, 175 F.3d 48, 56 (1st Cir. 1999) ("It is elementary that evidence cannot be submitted for the first time on appeal.").  In any event, given our holding, the facts contained in Gurka's proffer are immaterial.  There is no basis for remand.

---

[4]    Gurka's opening brief initially cited a variety of material not in the record.  We granted the government's motion to strike his brief and ordered Gurka to file a new one, which did not cite such material.  The order noted that Gurka could submit "an offer of proof," addressing "evidence he would submit to the district court were the case remanded."  Gurka's revised brief now includes as an addendum a lengthy "proffer" consisting of an excerpt from the transcribed recording of his June 26 transaction with the ATF agent, a copy of the ATF report pertaining to his arrest, and an affidavit from his trial counsel, addressing counsel's failure to present this evidence before the district court.  Gurka's reply brief contains excerpts from two additional recorded conversations with an ATF agent.  Despite the order's instructions, Gurka repeatedly cites to this material, using it as the foundation of his argument for remand.

We nonetheless consider and reject Gurka's preserved argument concerning whether the ordinary meaning of "in furtherance of" creates liability under § 924(c)(1)(A) for a defendant who uses drugs as payment to purchase a gun.  We also address and reject Gurka's additional, unpreserved claims.

B.        The Statute, 18 U.S.C. § 924(c)(1)(A)

Some background on the statutory text at issue provides context for Gurka's misplaced reliance on Watson.

As originally enacted, § 924(c)(1)(A) applied only to a defendant who "use[d] or carrie[d] a firearm" "during and in relation to any . . . drug trafficking crime."  18 U.S.C. § 924(c)(1)(A) (1998); see Pub. L. No. 105-386, 112 Stat. 3469 (1998).  Congress added the "possession in furtherance" prong to the text in 1998, Pub. L. No. 105-386, 112 Stat. 3469, shortly after the Supreme Court ruled that mere possession of a gun in the vicinity of a drug transaction did not constitute "use" under § 924(c)(1)(A), Bailey v. United States, 516 U.S. 137, 143 (1995); see also id. ("Had Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided.").  The amended text, which concerns us, reads:

> Except to the extent that a greater minimum
> sentence is otherwise provided by this subsection
> or by any other provision of law, any person who,
> during and in relation to any . . . drug
> trafficking crime . . . for which the person may be
> prosecuted in a court of the United States, uses or
> carries a firearm, or who, in furtherance of any

> such crime, possesses a firearm, shall, in addition
> to the punishment provided for such . . . drug
> trafficking crime . . . (i) be sentenced to a term
> of imprisonment of not less than 5 years.

18 U.S.C. 924(c)(1)(A), (i) (emphasis added).

Watson was the second case in which the Supreme Court considered the application of the "use" language to transactions involving the exchange of guns and drugs. The Court had earlier held that § 924(c)(1)(A)'s "use" provision applied to a defendant who bartered a firearm for drugs. Smith v. United States, 508 U.S. 223, 241 (1993). Watson clarified that the term "use" did not extend to the opposite situation, in which a defendant exchanged drugs for guns. 552 U.S. at 83. Watson noted Congress's amendment to add the "possession in furtherance" prong of the statute, but explicitly did not address the amended statute's application to such exchanges. Id. (observing that a drugs-for-guns exchange "may or may not" constitute possession in furtherance). No subsequent Supreme Court opinion has spoken to whether such drugs-for-guns transactions constitute "possession in furtherance."

Nonetheless, Gurka contends that Watson's reasoning undercuts the basis for his guilty plea to Count Six and that it was error to deny him leave to withdraw his plea. He says the facts to which he admitted do not constitute a crime under § 924(c)(1)(A), and urges that the application of the "possession in furtherance" prong to his conduct "runs afoul of Watson's

concerns about using 'ordinary and natural meanings' of language in context."  See Watson, 552 U.S. at 79; see also Smith, 508 U.S. at 228.  His sole preserved argument is that the timing of the transaction meant that he did not "possess" the guns until the drug sale had been completed and, as a result, his possession did not "further" the drug trafficking crime.  We disagree.

Watson does not bear the weight Gurka says it does. "Use" is a different word than "possess," with a different meaning. Compare Merriam-Webster's Collegiate Dictionary 1301 (10th ed. 1993) (defining "use" as "to put into action or service"), with id. at 909 (defining "possess" as "to have and hold as property").  And the fact that the relevant possession of a firearm is limited to possession in furtherance of a drug trafficking crime is not informed by Watson at all.  We join the three circuits holding Watson does not affect the prong of 18 U.S.C. § 924(c)(1)(A) concerned with "possession in furtherance."  United States v. Doody, No. 09-3078, 2010 WL 1253608, at *3 (7th Cir. Apr. 2, 2010); United States v. Gardner, Nos. 08-4793-cr(L), 08-5268(con), 2010 WL 801707, at *5 (2d Cir. Mar. 10, 2010); United States v. Mahan, 586 F.3d 1185, 1189 (9th Cir. 2009).  No circuit court has concluded otherwise.

For purposes of 18 U.S.C. § 924(c)(1)(A), "we have understood 'in furtherance of' to demand showing a sufficient nexus between the firearm and the drug crime such that the firearm

advances or promotes the drug crime."  United States v. Marin, 523
F.3d 24, 27 (1st Cir. 2008).  On the facts to which Gurka pled
guilty, there was an ample nexus between his possession of the
Bryco semi-automatic pistol and the drug trafficking crime charged
in Count Six.

As the district court said, whether or not receiving a
gun is "use,"

> [w]hen one receives a gun he clearly possesses it;
> and his possession of the gun at the end of the
> transaction is essential to the completion of that
> transaction.  Common sense tells us if the
> defendant had not accepted the gun (and never
> possessed it) the transaction would not have been
> consummated.

Gurka, slip op. at 5.  Given the terms of his barter agreement with
the agent, Gurka's possession of the gun was an essential component
of the drug sale.  See Gardner, 2010 WL 801707, at *4 ("Whether a
person who acquires a gun with drugs does so in order to obtain the
gun . . . or to sell drugs, that person furthers the sale of the
drugs by possessing the gun because, in either case, but for the
possession of the gun, the sale of drugs would not have
occurred."); Mahan, 586 F.3d at 1189 ("When a defendant accepts a
gun as payment for his drugs, his sale-and thus his crime-is
incomplete until he receives possession of the firearm."); see also
United States v. Frederick, 406 F.3d 754, 764 (6th Cir. 2005) ("As
a matter of logic, a defendant's willingness to accept possession
of a gun as consideration for some drugs he wishes to sell does

-10-

promote or facilitate that illegal sale.") (internal quotation marks omitted).

To the extent that Watson has any bearing on Gurka's claims, it is in the Supreme Court's emphasis on the normal meaning of words, see 552 U.S. at 79, which only reinforces our conclusion. Gurka's possession of the gun "furthered" the drug crime with which he is charged by the ordinary understanding of the term. "[W]hile it is not natural to say that a person who trades drugs for guns 'uses' the guns in the transaction, it is natural to say that a person who trades drugs for guns 'possesses' the guns 'in furtherance of' the transaction." Gardner, 2010 WL 801707, at *4.

Our holding as to the possession of a firearm in furtherance of a drug crime prong is consistent with the six circuits to have reached this issue, both before and after Watson. In United States v. Dolliver, 228 F. App'x 2 (1st Cir. 2007) (per curiam), which was unpublished, and issued several months before Watson was decided, we noted a "growing consensus" among circuit courts that bartering drugs for firearms constituted possession in furtherance. Id. at 3; see United States v. Luke-Sanchez, 483 F.3d 703, 706 (10th Cir. 2007); United States v. Boyd, 209 F. App'x 285, 290 (4th Cir. 2006) (per curiam); Frederick, 406 F.3d at 764.

Post-Watson, three more circuits have arrived at the same result. See Doody, 2010 WL 1253608, at *3; Gardner, 2010 WL 801707, at *5; Mahan, 586 F.3d at 1189; see also United States v.

-11-

Sterling, 555 F.3d 452, 458 (5th Cir. 2009) ("We . . . assume, without deciding, that bartering drugs for guns constitutes 'possession in furtherance' of a drug trafficking offense . . . ."). These courts' clear and persuasive reasoning further supports our conclusion.

In an argument largely independent of Watson, Gurka asserts that the fleeting nature of his handling of the guns before his arrest cannot be possession. The argument fails. Section 924(c)(1)(A) applies to any possession of a gun that furthers a drug trafficking crime. Gurka's possession of the guns, however brief, "made the drug transaction possible, and thus furthered it, and § 924(c) requires no more." Doody, 2010 WL 1253608, at *4.

Finally, Gurka makes two unpreserved arguments not presented in his motion to withdraw his plea. Gurka first attempts to recharacterize the exchange as a gun transaction rather than a drug sale. Gurka did not present this argument before the district court, and so we review it for plain error. E.g., Mescual-Cruz, 387 F.3d at 6. Gurka presents virtually no record evidence in support of this claim,[5] and it is both waived and meritless. Indeed, Gurka concedes that the record may "just as likely . . . indicate the guns were purchased to further the drug crime." As

---

[5] Gurka instead relies almost entirely on facts contained in his "proffer."

-12-

the evidence shows, Gurka was a drug dealer who kept a veritable arsenal at home with his drugs.

Gurka also urges that the ATF agent "actively pressured" him into using drugs to pay for the guns. This entrapment claim was not presented to the district court and is, moreover, utterly unsupported by any evidence in the record. Both arguments fail.

### III.

For the reasons stated above, we <u>affirm</u> the judgment.

**-Concurring Opinion Follows-**

**BOUDIN, <u>Circuit Judge</u>, concurring, with whom TORRUELLA, <u>Circuit Judge</u>, joins in the concurrence and joins in the result.** In construing federal statutes, an emphasis on literal language has much to be said for it, but phrases that at first glance seem to have a single meaning sometimes turn out to be more malleable. In this case, the statute's phrase "in furtherance of" can be read to extend to any firearm causally connected to the drug offense--the view taken by a number of circuits. On this view, receiving a gun as payment for drugs facilitates (and therefore its possession furthers) the drug sale. Indeed, if nothing but words mattered, using the gun as a paper weight or door stop during the transaction might qualify.

Yet, in adopting the "in furtherance" test, Congress likely had in mind a gun's possession in order to threaten or use it, if necessary, to accomplish the drug sale or at least to make the other party (or interlopers) fear its use. Possessing a gun to protect one's drugs from theft incident to a sale or to secure a base of operations are obvious examples. <u>E.g.</u>, 144 Cong. Rec. 1719 (1998) (statement of Rep. McCollum); <u>id.</u> at 26,608-09 (statement of Sen. DeWine); <u>cf.</u> <u>Smith</u> v. <u>United States</u>, 508 U.S. 223, 238 (1993) (typical case under use prong is one in which the firearm is used as "a means of protection or intimidation").[6]

_____

[6]The Senate hearing on the amendment that led to inclusion of the possession prong is filled with references to weapons used to intimidate, threaten or embolden. <u>E.g.</u>, <u>A Bill to Throttle</u>

-14-

That Congress had any special concern with guns used solely as payment for drugs is not clear,[7] nor is it obvious why the simple transfer of a gun from one drug dealer to another creates a new danger; conceivably a transfer from a consumer to a drug dealer might do so, although drug dealers rarely seem to lack access to guns and such sales are often independently unlawful. So, coupling this with the rule of lenity, United States v. Granderson, 511 U.S. 39, 54 (1994), the statute could be read more narrowly in light of its main purpose to exclude from "in furtherance" those transfers, like Gurka's, in which the gun is merely currency.

But the Supreme Court resolved in Smith the question of whether 18 U.S.C. § 924(c)(1)(A) goes beyond the typical use of guns as weapons to cover at least some barter transactions, albeit under the provision's "use" prong and involving a trade in the

---

Criminal Use of Guns: Hearing on S. 191 Before the S. Comm. on the Judiciary, 105th Cong. 4 (1997) ("Senate Hearing") (statement of Sen. Helms); id. (statement of Sen. DeWine); id. at 9-10 (statement of Kevin Di Gregory, Deputy Assistant Att'y Gen., Criminal Division, Department of Justice); id. at 35-37 (prepared statement of Thomas G. Hungar, Gibson, Dunn, and Crutcher).

[7]Interestingly, there are a couple of references in the Senate hearing, where the "possession" amendment was under consideration, to guns used as barter; but they are essentially descriptions, rather than endorsements, of the dicta in Bailey v. United States, 516 U.S. 137 (1995), reiterating the holding of Smith, that barter can be deemed "use" of the gun. Senate Hearing, supra, at 1 (statement of Sen. Hatch); id. at 10 (statement of Kevin Di Gregory, Deputy Assistant Att'y Gen., Criminal Division, Department of Justice).

opposite direction (guns for drugs). 508 U.S. at 229. Once the barter bridge is crossed, it is hard to argue that the statute automatically excludes cases where guns were possessed as currency in a drug transaction, especially as Smith, 508 U.S. at 228-31, 235-39, and Watson v. United States, 552 U.S. 74, 78-83 (2007), stress an emphatically literal reading.

Neither Smith nor Watson directly controls here (since neither addressed the meaning of the statute's possession "in furtherance" prong and Watson explicitly left that issue open, 552 U.S. at 83); but Smith rejected the view that "the relationship between the gun and the drug offense [in a gun-for-drugs exchange] is not the type of connection Congress contemplated when it drafted § 924(c)(1)," 508 U.S. at 238. In such an exchange, Smith said, the gun is "an integral part of the transaction," without which "the deal would not have been possible." 508 U.S. at 238.[8]

And Smith expressly rejected a claim of contrary congressional purpose: it reasoned that Congress probably did not intend to "draw a fine metaphysical distinction between a gun's role in a drug offense as a weapon and its role as an item of barter; [the gun] creates a grave possibility of violence and death

---

[8]That transaction, arising under the "use" prong, was found to meet the required "during and in relation to" standard of that provision. Even if "in furtherance" is a "slightly higher standard" of connection than "during and in relation to," H. Rep. 105-344, at 11 (1997), the former phrase's literal meaning permits this same line of reasoning.

in either capacity" because its "treat[ment] momentarily as an item of commerce does not render it inert or deprive it of destructive capacity."  508 U.S. at 240.  Instead, "it can be converted instantaneously from currency to cannon."  Id.

Watson provides Gurka no escape.  Although Watson (unlike Smith) addressed a drugs-for-gun trade and reserved the "in furtherance" question, its restriction of the "use" prong was predicated on the word's connotation of action, 552 U.S. at 78-79; "possession," as our panel opinion explains, does not pose for the government the same semantic barrier, nor did Watson disturb Smith's inferences about congressional purpose, id. at 82-83.  Only if the Supreme Court were to re-examine its basic premise as to the statute's purpose could a favorable result follow for Gurka.  See Watson, 552 U.S. at 84 (Ginsburg, J., concurring).