14-3211 (L)
*United States v. Sebbern*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand fifteen.

PRESENT:    JOSÉ A. CABRANES,
            BARRINGTON D. PARKER,
            RAYMOND J. LOHIER, JR.,
                        *Circuit Judges.*

---

UNITED STATES OF AMERICA,

        *Appellee,*                                    14-3211 (L), 14-3226 (Con)

        v.

DONTAE SEBBERN, AKA K-DON, AKA KD, DEXTER WAITERS,

        *Defendants-Appellants.*

---

FOR DEFENDANT-APPELLANT SEBBERN:      JOHN MERINGOLO, Meringolo & Associates, PC, New York, NY.

FOR DEFENDANT-APPELLANT WAITERS:      ROBERT ROSENTHAL, New York, NY.

FOR APPELLEE:                         SHREVE ARIAIL (Peter A. Norling, Kevin M. Trowel, *on the brief*), Assistant United States Attorneys, *for* Robert L. Capers, United States Attorney, Eastern District of New York, Brooklyn, NY.

Appeal from judgments of the United States District Court for the Eastern District of New York (Sandra L. Townes, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the District Court be and hereby are **AFFIRMED**.

Defendants-appellants Dontae Sebbern ("Sebbern") and Dexter Waiters ("Waiters") appeal from judgments of conviction entered on August 29, 2014, after a jury found them guilty of numerous crimes related to their participation in the "Gorilla Bloods" gang. Specifically, the jury convicted defendants of racketeering (Count One); racketeering conspiracy (Count Two); murder in aid of racketeering (Count Three); conspiracy to commit murder in aid of racketeering (Count Four); use of firearms in furtherance of a crime of violence (Count Five); being a felon in possession of a firearm (Count Six as to Sebbern and Count Seven as to Waiters); and conspiracy to distribute cocaine and cocaine base (Count Nine). In addition, the jury convicted Waiters of possessing body armor after being convicted of an offense that constitutes a crime of violence (Count Eight), and convicted Sebbern of possession of narcotics with intent to distribute (Count Eleven).[1] (The jury acquitted defendants of using a firearm in connection with the drug trafficking conspiracy.) The District Court sentenced each defendant principally to three concurrent terms of life imprisonment.[2]

On appeal, Sebbern argues (1) that there was insufficient evidence for the jury to convict him of (a) the murder of Jermaine Dickersen ("Dickersen"), (b) murder conspiracy, (c) narcotics trafficking conspiracy, (d) racketeering, (e) racketeering conspiracy, or (f) use of a firearm in connection with those crimes; (2) that the District Court erred in charging the jury with respect to aiding and abetting liability, per *Rosemond v. United States*, 134 S. Ct. 1240 (2014); (3) that the Government withheld material information, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), regarding a traffic stop on November 7, 2009; (4) that the traffic stop was unreasonable under the Fourth Amendment; (5) that the District Court erred in admitting letters and phone calls made by Sebbern and Waiters after their arrest, in violation of the Federal Rules of Evidence and the Confrontation Clause of the Sixth Amendment; and (6) that the narcotics seized from Sebbern on July 15, 2009, should have been suppressed or, in the alternative, that the District Court erred in

---

[1] The judgments entered on August 29, 2014, incorrectly indicate that defendants pleaded guilty to several of the counts.

[2] In addition, each defendant received concurrent sentences of 120 months (Count Four), 120 months (Count Six as to Sebbern, Count Seven as to Waiters), and 480 months (Count Nine), and a consecutive sentence of 60 months (Count Five). Waiters also received a concurrent sentence of 36 months (Count Eight), and Sebbern received an additional concurrent sentence of 240 months (Count Eleven).

denying Sebbern's request for a "mere possession" jury charge with respect to Count Eleven. Waiters likewise challenges the sufficiency of the evidence supporting his convictions for Counts One through Five and Nine. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## A. Sufficiency of the Evidence

In challenging the sufficiency of the evidence, defendants "bear[ ] a heavy burden," as our "standard of review is exceedingly deferential." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks omitted). In particular, "we must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (internal quotation marks omitted). "Although sufficiency review is *de novo*, we will uphold the judgments of conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted). We owe particular deference to the jury's findings in a conspiracy case. *See United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008).

### 1. Dickersen Murder

Defendants argue that there was insufficient evidence to support their convictions for Dickersen's murder. The Government presented evidence showing, *inter alia*, that on the night of the murder, defendants were at a party, during which Dickersen's "crew" was responsible for the beating of Tyrone Harley ("Harley"), a high-ranking Gorilla Blood, and the shooting of Joshua Demellier, another member of the gang. After the party, Harley berated defendants for failing to intervene. Dickersen was shot and killed shortly thereafter.

Defendants were arrested near the murder scene, just after Dickersen's murder, wearing body armor, as they and an unidentified third person fled from Harley's car after dropping two firearms, one of which was the murder weapon. After his arrest, Waiters wrote two letters to an associate that, according to the Government, amounted to an admission of his involvement in the homicide.

Viewing this evidence as a whole, *see United States v. Huezo*, 546 F.3d 174, 183 (2d Cir. 2008), we conclude that a rational juror could have found that defendants planned to murder Dickersen, and that they did in fact murder him, in order to placate or impress Harley, a high-ranking member of their gang who had recently rebuked defendants for failing to oppose Dickersen at the party.

### 2. Narcotics-Trafficking Conspiracy

Defendants' argument that there was insufficient evidence to demonstrate their involvement in a narcotics-trafficking conspiracy is equally unavailing. As Sebbern helpfully explains, defendants

3

"sold drugs together, and whatever crack heads came by, they shared." Waiters Reply Br. 12 (quoting Waiters App. 940). Their cooperative marketing—together with defendants' operating from a shared location controlled by Gorilla Bloods and their use of shared phone numbers—permitted a reasonable juror to find beyond a reasonable doubt that defendants possessed "some knowledge" of the unlawful aims and objectives of the alleged conspiracy, whose "essential nature" was to distribute drugs. *See United States v. Salameh*, 152 F.3d 88, 147 (2d Cir. 1998) (internal quotation marks omitted).

### 3. Use of a Firearm in Connection with Counts One through Four

Finally, defendants challenge the sufficiency of the evidence supporting their conviction for use of a firearm in connection with the crimes charged in Counts One through Four, in violation of 18 U.S.C. § 924(c)(1)(A).[3] In particular, Sebbern argues that because the jury did not find that Sebbern or Waiters had discharged a firearm in connection with Dickersen's murder, they could only have been found guilty of using a firearm under an aiding-and-abetting theory; and that the District Court's aiding-and-abetting instruction was "plainly erroneous" in light of *Rosemond*, 134 S. Ct. at 1240.

We need not reach the aiding-and-abetting issue, because there was sufficient evidence to convict defendants as principals. As defendants concede, § 924(c) permits conviction not only for discharging a firearm, but also for carrying or possessing a firearm in furtherance of a crime of violence. *See United States v. Gardner*, 602 F.3d 97, 100 (2d Cir. 2010). Here, the predicate crime of violence was Dickersen's murder. Shortly after that murder, Waiters was arrested just after dropping the 9 mm handgun that fired the shot that killed Dickersen, and Sebbern was arrested just after dropping another handgun. Based on this evidence, a reasonable juror could have found beyond a reasonable doubt not only that defendants participated in Dickersen's murder, but also that they did so while carrying firearms "in furtherance of" that crime.

---

[3] Section 924(c)(1)(A) provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime . . .
>
> > (i) be sentenced to a term of imprisonment of not less than 5 years;
> >
> > (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
> >
> > (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

## B. Admission of Evidence

Sebbern challenges several of the District Court's evidentiary rulings. "Although we review *de novo* the legal issues presented by a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and we view those facts in the light most favorable to the government." *United States v. Casado*, 303 F.3d 440, 443 (2d Cir. 2002).

### 1. November 7, 2009 Stop

Sebbern challenges the admission of evidence related to his traffic stop and subsequent arrest on November 7, 2009, shortly after Dickersen's murder.[4] Specifically, Sebbern argues that the stop was unreasonable under the Fourth Amendment, and that the Government violated its duty under *Brady* to disclose before trial that Officer James Piscopo ("Piscopo") would offer testimony indicating that the stop lacked any justification.

As the District Court correctly noted, a traffic stop is presumptively reasonable under the Fourth Amendment if "the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Here, the District Court found that the police had probable cause to believe that the black Mercedes in which Sebbern and Waiters were riding had run a stop sign. We see no reason to question that finding. Sebbern's only argument to the contrary is his assertion that Piscopo testified at trial "that there was no reason to suspect the Mercedes was involved in criminal activity" before it was stopped. Sebbern Br. 36. But this mischaracterizes his testimony, which was that Piscopo decided to *follow* the Mercedes while it was still obeying traffic laws, but that the police *stopped* it only after it ran a stop sign and nearly collided with a police car. Plainclothes officers who follow a vehicle in an unmarked car do not display the "physical force or show of authority" required for a stop. *See United States v. Adegbite*, 846 F.2d 834, 837 (2d Cir. 1988) (internal quotation marks omitted); *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("A lawful roadside stop *begins* when a vehicle is *pulled over* for investigation of a traffic violation." (emphases supplied)).

The substance of Piscopo's testimony—which was materially consistent with the testimony of other officers at trial and of Officer Richard Ortiz at the suppression hearing—also makes it clear that no *Brady* violation occurred. "To establish a *Brady* violation, a defendant must show (1) that the evidence at issue is favorable to the accused," because it is exculpatory or impeaching; (2) that the Government suppressed that evidence, "either willfully or inadvertently"; and (3) that prejudice ensued. *United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006) (internal quotation marks omitted).

---

[4] Although Sebbern never moved in the District Court to suppress the evidence, Waiters's motion to suppress was sufficient to preserve the issue for appeal. *See United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002).

Sebbern has satisfied none of these prongs. First, Sebbern has not shown that Piscopo's testimony, which reinforces the Government's narrative that the police pulled over the Mercedes after it committed a traffic violation, was favorable to defendants. Second, Sebbern offers no evidence that the Government suppressed Piscopo's testimony, or that the Government's disclosure, pursuant to 18 U.S.C. § 3500, of "notes, reports and prior testimony of Officer Piscopo in the state grand jury," gave Sebbern insufficient notice of its contents. *See* Gov't Br. 51-52. Finally, no prejudice ensued. The District Court found that, even if the police had acted unreasonably in stopping the Mercedes, Waiters had failed to assert Fourth Amendment standing to seek suppression of the handgun recovered from the stop—a finding Sebbern does not challenge on appeal. Accordingly, even if Piscopo's testimony had shown that the stop was unreasonable, it would have made no difference to the case's outcome.

## 2. Admission of Waiters's Letters from Prison

Sebbern challenges the admission at trial of two letters Waiters wrote from prison, in which Waiters allegedly admitted his involvement in Dickersen's murder. In one letter, Waiters wrote to a Gorilla Blood that "if you should oppress a rilla [Gorilla Blood] you should be delt wit no matter who you are and dats basically wut this is about." Waiters App. 1915-16, 2585-86. In the other, he wrote that he "had to let [his] knuckles drag on a few dirty monkeys who felt that they could disrespect" his gang. Waiters App. 1925, 2587-88. Sebbern and the Government interpreted these statements as admissions of participation in the homicide. Sebbern concedes that Waiters's letters do not incriminate him directly, and therefore that *Bruton v. United States*, 391 U.S. 123 (1968), does not apply. Instead, he relies on *Crawford v. Washington*, 541 U.S. 36 (2004), which holds that the Confrontation Clause of the Sixth Amendment generally bars "the admission of *testimonial* statements of a witness who did not appear at trial" for cross-examination, *id.* at 53-54 (emphasis supplied). But because Waiters's letters to fellow gang members were not testimonial, the Confrontation Clause poses no bar to their admission. *See United States v. Williams*, 506 F.3d 151, 156-57 (2d Cir. 2007).

## 3. July 15, 2009 Stop

Finally, Sebbern argues that the District Court erred in failing to suppress drugs seized from his car on July 15, 2009, after the police stopped him for a traffic violation. The District Court credited testimony by Officer Christopher Parco ("Parco") that during the stop, he "observed 2 or 3 clear plastic bags containing what appeared to be crack cocaine lying in plain view on the front lip of the sunroof" of Sebbern's car. Sebbern App. 231 (Order of Nov. 30, 2012). Sebbern asserts that "[i]t defies logic" that Parco "could have seen the crack cocaine in the sunroof." Sebbern Br. 77. Instead, Sebbern insists, "the narcotics could only have been found after Sebbern had been arrested and removed from the car, rendering the search improper under" *Arizona v. Gant*, 556 U.S. 332 (2009). Sebbern Br. 77-78. Sebbern offers no support for this statement, and his bare assertion of an alternative narrative is insufficient to suggest any error, much less clear error, in the District Court's

decision to credit Parco's version of events. *See United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015) ("We pay special deference to the district court's factual determinations going to witness credibility." (internal quotation marks omitted)).

## CONCLUSION

We have reviewed all of the other arguments raised by Sebbern and Waiters on appeal and find them to be without merit. Accordingly, we **AFFIRM** the August 29, 2014 judgments of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk